[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 7, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-10856

_____

D. C. Docket No. 03-01350-CV-MHS-1

MILDRED ROBINSON, Individually,
and on behalf of and as next friend to Steven
Walters, Jr., Sean Paul Walters, Anthony Walters,
and Jabhari Walters, minor children of decedent,
Steven Walters,

Plaintiff-Appellant,

versus

DANIEL ARRUGUETA,
BRIAN M. SULLIVAN,
KEVIN HARTMANN,
RICK VAZQUEZ,
DONALD L. TITUS, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(July 7, 2005)**

Before EDMONDSON, Chief Judge TJOFLAT and KRAVITCH, Circuit Judges.

KRAVITCH, Circuit Judge:

Plaintiff-appellant Mildred Robinson, as next-of-kin of Steven Walters, deceased, and on behalf of Walters's minor children, appeals the district court's grant of summary judgment in favor of Daniel Arrugueta, a law enforcement officer, in her action alleging use of excessive force resulting in Walters's death.

**I**.

The relevant facts and procedural history are as follows. Members of the Atlanta High Intensity Drug Trafficking Area ("HIDTA") Task Force arrested two individuals on June 6, 2001 near a parking lot on Ponce de Leon Avenue ("Ponce") in Atlanta for selling nine ounces of heroin to an undercover agent. One of the suspects agreed to cooperate by assisting the agents in apprehending his suppliers. He arranged to meet his suppliers later that day, under the pretense of delivering the funds he received from the sale of heroin.

That afternoon, the HIDTA agents gathered by a doughnut shop on Ponce where the delivery was to take place. The cooperating suspect identified a Ford Escort carrying three passengers as the vehicle in which his suppliers were driving. Arrugueta, a special agent employed by the Immigration and Naturalization Service, followed the Escort in an unmarked vehicle. The Escort drove past the

2

doughnut shop, made a U-turn, and then stopped three to four feet behind a civilian car waiting at a traffic light on the corner of Ponce and Argonne Avenue. The driver of the vehicle and a passenger then exited the Escort and began walking toward the doughnut shop. All units converged upon them. Both suspects were arrested promptly thereafter.

Walters, the remaining suspect who apparently had also exited the Escort and then re-entered, was sitting somewhere in between the front right passenger seat and the driver's seat.[1] Arrugueta had exited his car and stood in between the Escort and the car in front of it. The distance between Arrugueta and the Escort was only two to four feet at the most. Arrugueta pointed his gun at Walters, verbally identified himself as "Police," and told him to put his hands up. Walters made eye contact with Arrugueta, but defied the order to raise his hands. Instead, Walters grinned at Arrugueta as the Escort slowly began to move forward at a likely speed of around one to two miles per hour. Thus, Arrugueta had, at most, 2.72 seconds to react before getting crushed between the two cars.[2] As Arrugueta tried to get out of the way of the moving car, he shot Walters through the

---

[1]The district court judge found, for the purposes of the qualified immunity analysis, that Walters was sitting between the driver's and passenger's seat. The majority of the witnesses, however, placed him directly in the driver's seat.

[2]One mile equals 5,280 feet. There are 3,600 seconds in an hour. 5,280 ft. ÷ 3,600 s. = 1.47 ft./s. If the vehicle could move 4 feet at the most towards him before he was crushed, then he had 2.72 seconds (i.e. 4 ft. ÷ 1.47 ft./s. = 2.72 s.) to react.

3

windshield. The Escort stopped immediately thereafter. Walters was then removed from the car and given medical attention. The paramedics were not able to save him.

Walters's mother, Mildred Robinson, brought suit in the district court as Walters's next-of-kin and on behalf of Walters's minor children. Robinson's complaint contained seven different Counts. Count I of the complaint alleged that Arrugueta violated Walters's Fourth Amendment rights by unreasonably using deadly force in violation of *Bivens v. Six Unkown Agents*, 403 U.S. 388, 91 S.Ct. 1999 (1971).[3] Arrugueta moved for summary judgment as to Count I arguing the claim was barred on qualified immunity grounds. *See Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The district court granted Arrugueta's motion. Robinson now appeals.

## II.

*A. Standard of Review*

We review the district court's grant of summary judgment *de novo*, drawing all inferences in favor of Robinson. *Korman v. HBC Fla., Inc.*, 182 F.3d 1291,

---

[3]This appeal only concerns Count I of the complaint. Count II alleged that Arrugueta and the other HIDTA agents conspired to deprive Walters of his Fourth Amendment rights. Counts III and IV asserted claims under 42 U.S.C. § 1983 against the HIDTA agents who were employed by state and local enforcement agencies. Counts V, VI, and VII asserted claims against the United States under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq*. The district court either dismissed or granted summary judgment in favor of the defendants on all of these counts.

1293 (11th Cir. 1999).

*B. Grant of Qualified Immunity*

In *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001), the Supreme Court set out a two-step analysis to determine whether an officer is eligible for qualified immunity. The first step is to determine whether the facts "[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a constitutional right[.]" *Id.* If the conduct did not violate a constitutional right, the inquiry ends there. If the conduct violated a constitutional right, a court must move on to the second step and determine "whether the right was clearly established." *Id.* Under the first step, the district court found that Arrugueta had violated Walters's Fourth Amendment right to be free from excessive force. The court found, however, that under the second step the right violated was not clearly established and thus Arrugueta was entitled to qualified immunity.

We first examine whether the district court correctly found that Arrugueta's conduct violated a constitutional right. The Fourth Amendment protects individuals from "unreasonable" seizures. Deadly force is "reasonable" for the purposes of the Fourth Amendment when an officer "(1) 'has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer

5

or to others' or 'that he has committed a crime involving the infliction or threatened infliction of serious physical harm;' (2) reasonably believes that the use of deadly force was necessary to prevent escape; and (3) has given some warning about the possible use of deadly force; if feasible." *Vaughan v. Cox*, 343 F.3d 1323, 1329-30 (11th Cir. 2003) (quoting *Tennessee v. Garner*, 471 U.S 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)); *see also Crosby v. Monroe County*, 394 F.3d 1328, 1333 (11th Cir. 2004) ("the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation.").

The district court relied on the following facts, taken in the light most favorable to Robinson, in making its determination that Arrugueta's conduct violated the Fourth Amendment: (1) at the time of the shooting, Walters was in between the passenger's seat and the driver's seat, (2) the car was rolling slowly downhill, and (3) Arrugueta could have avoided the vehicle by stepping aside.

Though the facts must be taken in the light most favorable to Robinson, the determination of reasonableness must be made from the perspective of the officer.

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . . . The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-

6

second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation.

*Menuel v. City of Atlanta*, 25 F.3d 990, 996 (11th Cir. 1994), quoting *Graham v. Connor*, 490 U.S. 386, 396-97, 109 S.Ct. 1865, 1872 (1989).

The law existing in Georgia at the time of this incident instructed that a car driven in a threatening manner can be considered a deadly weapon. *Webb v. State*, 256 Ga. App. 653, 654, 569 S.Ed.2d 596, 597 (2002) ("[O]ne who aims a motor vehicle at another person may be convicted of aggravated assault regardless of whether the victim sustained any injuries or was even touched by the vehicle."). Furthermore, under Georgia law, a law enforcement officer is justified in using deadly force to prevent death or great injury to himself/herself or to third parties. *See* O.C.G.A. §§ 16-3-23 and 17-4-20.

Here, Arrugueta was standing in a narrow space between the two vehicles, Walters was disobeying Arrugueta's orders to put his hands up, the Escort was suddenly moving forward and Arrugueta had to make a split-second decision of whether he could escape before he got crushed. At the most, Arrugueta had only 2.72 seconds to react to what he perceived as a threat of serious physical harm from Walters.

Our precedent instructs us to take into account that "[r]econsideration [after

7

the uncertainty and the excitement of the moment have passed] will nearly always reveal that something different could have been done if . . . the future [was known] before it occurred." *Carr v. Tatangelo*, 338 F.3d 1259, 1270 (11th Cir. 2003). Even if in hindsight the facts show that Arrugueta perhaps could have escaped unharmed, we conclude that a reasonable officer could have perceived that Walters was using the Escort as a deadly weapon. Arrugueta had probable cause to believe that Walters posed a threat of serious physical harm.

In the case of *Brosseau v. Haugen*, – U.S. –, 125 S.Ct. 596, 600, 160 L.Ed.2d 583 (2004), the Supreme Court held that it was objectively reasonable for Officer Brosseau to use deadly force against a suspect in an attempt to prevent the suspect's escape and potential harm to others. Here, Arrugueta perceived that Walters was attempting to crush him and endanger his life. Because it is constitutionally reasonable for an officer to use deadly force when a suspect is threatening escape and possible harm to others, it is also constitutionally reasonable for an officer to use deadly force when he has probable cause to believe that his own life is in peril.[4] Thus, we conclude that Arrugueta is entitled to qualified immunity under the first step of the *Saucier* analysis.

Even though our inquiry ends at the first step of the analysis, we note that

---

[4]*Brosseau* is a recent opinion, which the district court judge did not have the benefit of relying upon when deciding this case.

the district court was correct in finding that, under the second step, the law was not clearly established, and thus, Arrugueta is entitled to qualified immunity under this step as well. *See Vaughan*, 343 F.3d at 1332; *see also Brosseau*, __ U.S. __, 125 S.Ct. at 599 ("Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted.").

Robinson argues that the law is clearly established in this area. *See Garner*, 471 U.S. at 12, 105 S.Ct. at 1701 ("Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so."). Robinson contends that Walters posed no immediate threat to Arrugueta because the Escort was moving slowly and Arrugueta had enough time to get out of the Escort's way. The Supreme Court, however has emphasized that the inquiry into whether the law is clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau*, 125 S.Ct. at 599, quoting *Saucier*, 533 U.S. at 201. We conclude that, at the time of the shooting, no clearly defined preexisting law would have indicated to Arrugueta that his use of force under this specific factual situation was unlawful.

### C. Material Issues of Disputed Facts Do Not Foreclose the Grant or Denial of Summary Judgment Based on Qualified Immunity

9

Robinson contends that genuine issues of material fact exist concerning the events that led Arrugueta to fire his gun and, therefore, Arrugueta, is not entitled to summary judgment on the ground of qualified immunity. The Supreme Court has instructed, however, that "[t]o deny summary judgment any time a material issue of fact remains on the excessive force claim–could undermine the goal of qualified immunity to 'avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment.'" *Saucier*, 533 U.S. at 202 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982)).[5]

When conducting a qualified immunity analysis, district courts must take the facts in the light most favorable to the party asserting the injury. *Saucier*, 533 U.S. at 20. When a district court considers the record in this light, it eliminates all issues of fact. By approaching the record in this way, the court has the plaintiff's best case before it. With the plaintiff's best case in hand, the court is able to move to the question of whether the defendant committed the constitutional violation alleged in the complaint without having to assess any facts in dispute. Thus,

---

[5] We note that qualified immunity is "immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815 (1985). "[The] important purposes of qualified immunity are thwarted if a case is erroneously permitted to go to trial." *Harrell v. Decatur County, GA*, 22 F.3d 1570, 1578 (11th Cir. 1994) (Dubina, J. dissenting) *vacated by* 41 F.3d 1494 (11th Cir. 1995) (adopting Judge Dubina's dissenting opinion). The purpose of qualified immunity is to ensure that officials are not deterred or distracted from carrying out their official duties because of fear of a later lawsuit. *Id.*

because material issues of disputed fact are not a factor in the court's analysis of qualified immunity and cannot foreclose the grant or denial of summary judgment based on qualified immunity; we decline to entertain Robinson's arguments concerning the allegedly disputed facts.

## III.

For the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment to Arrugueta based on qualified immunity.