[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 7, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-12916
Non-Argument Calendar

_____

D. C. Docket No. 06-00164-CV-KD

TERRY HAMILTON,

Plaintiff-Appellee,

versus

CITY OF JACKSON, ALABAMA, et al.,

Defendants,

BARRY FOWLER,
individually, and as an officer for
the Jackson Police Department,
AARON CARPENTER,
DARRYL JACKSON,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

**(January 7, 2008)**

Before ANDERSON, HULL and WILSON, Circuit Judges.

PER CURIAM:

Defendants/Appellants Barry Fowler, Aaron Carpenter, and Darryl Jackson appeal the district court's order denying, in part, their motion for summary judgment in a civil rights action filed by Plaintiff/Appellee Terry Hamilton. For the reasons set forth below, we affirm.

## BACKGROUND

Hamilton alleges that he met his stepdaughter Renita Greer at the Jackson Police Department on or about March 17, 2004, to discuss an altercation between his stepdaughter's son and another young man. They met with Officer Fowler and were eventually escorted into an office, followed by officers Carpenter, Jackson, and Gary Garrett. In the office, Fowler sat behind a desk, and Hamilton and Greer sat on the opposite side. The other officers stood in varying positions between Hamilton and Greer and the doorway.

Because Hamilton and Greer soon felt that the conversation was not accomplishing anything, Hamilton suggested to Greer that they talk to the Mayor of Jackson. Hamilton alleges that when he and Greer stood up to leave, Fowler pushed Greer out of the way, pressed Hamilton up against the door and grabbed Hamilton's throat. Carpenter and Jackson each then allegedly grabbed one of

2

Hamilton's arms. Hamilton claims that Fowler held him by the throat and squeezed for between thirty and forty seconds, almost causing Hamilton to lose consciousness. While choking Hamilton, Fowler said, "Terry Hamilton, you are not going to threaten me. I will lock you up in a cell." Hamilton claims that Fowler grabbed him from behind after he had turned right outside of the doorway to walk down the hall. When Fowler released his grip on Hamilton, he told Hamilton to sit back down in the chair. After eight to ten minutes, the officers let Hamilton and Greer leave.

The appellants contend that when Hamilton quickly stood up, Fowler mistakenly thought that Hamilton was going to strike him and grabbed Hamilton to protect himself. They claim that the other officers used force because they also believed Hamilton that was going to "act out against Officer Fowler" immediately. Additionally, the appellants seem to suggest that Hamilton had not turned to leave the room before Fowler detained him.

Hamilton sued the Chief of the Jackson Police Department, the City of Jackson, and officers Fowler, Garrett, Carpenter and Jackson, raising four state-law claims and a 42 U.S.C. § 1983 claim. The district court dismissed Garrett from the case with prejudice and granted summary judgment for the City of Jackson and the Chief of Police. The district court also granted summary judgment for the

appellants as to one of the state-law claims. The court found, however, that genuine issues of material fact precluded summary judgment on the state-law battery and false imprisonment claims and that the appellants were not entitled to qualified immunity for the § 1983 claim. In response, Fowler, Carpenter and Jackson filed a notice of interlocutory appeal.

## STANDARD OF REVIEW

We review *de novo* a district court's denial of a summary judgment motion based on qualified immunity and Alabama discretionary-function immunity, viewing the facts in the light most favorable to the plaintiff. *Andujar v. Rodriguez*, 486 F.3d 1199, 1202 (11th Cir. 2007), *cert. denied*, 76 U.S.L.W. 3187 (U.S. Oct 9, 2007) (No. 07-5630); *Taylor v. Adams*, 221 F.3d 1254, 1257 (11th Cir. 2000). We accept the plaintiff's version of the facts "and then answer[] the legal question of whether the [d]efendants are entitled to qualified immunity under that version of the facts." *West v. Tillman*, 496 F.3d 1321, 1326 (11th Cir. 2007). Consequently, "material issues of disputed fact are not a factor in the court's analysis of qualified immunity and cannot foreclose the grant or denial of summary judgment based on qualified immunity." *Robinson v. Arrugueta*, 415 F.3d 1252, 1257 (11th Cir. 2005).

## DISCUSSION

4

A.  Jurisdiction

"Although the denial of summary judgment generally is not a final appealable order subject to immediate appeal, an interlocutory appeal may be taken where the district court denies the defense of qualified immunity and the appeal involves a question of law." *Andujar*, 486 F.3d at 1202 (internal quotation marks omitted).  The district court concluded that the appellants were not entitled to qualified immunity because the facts that Hamilton alleged constituted a violation of clearly established law.  Accordingly, the denial of qualified immunity to the appellants is immediately appealable.

Furthermore, because the same principles govern a district court's denial at the summary judgment stage of Alabama discretionary-function immunity, *Taylor*, 221 F.3d at 1260 n.9, we may also exercise jurisdiction over the appeal of the district court's denial of summary judgment for the battery and false imprisonment claims.

B.  Qualified Immunity from the § 1983 Claim

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Andujar*, 486 F.3d at 1202 (internal quotation marks

5

omitted). If, as here, a government official has shown that he was acting within his discretionary authority when the allegedly wrongful acts occurred, a two-part test determines whether qualified immunity is an appropriate basis for granting the government official's summary judgment motion. *Id.* The first question is whether the plaintiff's "allegations, if true, establish a constitutional violation." *Id.* at 1203 (internal quotation marks omitted). The second question is whether the constitutional right allegedly violated was clearly established at the time of the alleged violation. *Id.*

### 1. Constitutional Violation?

Hamilton argues that the appellants violated his rights to be free from excessive force under the Fourth and Fourteenth Amendments. In *Graham v. Connor*, 490 U.S. 386, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989), the Supreme Court held that the Fourth Amendment applied to all claims alleging that a police officer used excessive force in the course of an arrest, investigatory stop, or, as applies here, other seizure of a free citizen. *Id.* at 395, 109 S. Ct. at 1871. The Court declared that because an officer must often quickly decide how much force he needs to use to respond to what he perceives to be a potentially dangerous situation, each excessive force analysis turns on whether the official's actions were objectively reasonable in light of the facts and circumstances that confronted the

6

official at the time of the alleged violation. *Id.* at 396-97, 109 S. Ct. at 1872. Accordingly, we have held that, while we take the nonmoving party's allegations as true, we must make our reasonableness determination from "the perspective of a reasonable officer on the scene." *Robinson*, 415 F.3d at 1255.

Hamilton claims that he and Greer did nothing during the conversation with Fowler that would support a reasonably prudent officer in concluding that the use of force was justified. Accepting Hamilton's version of the facts, they merely stood up and turned to leave the room because they were dissatisfied with how Fowler was handling their request. Furthermore, Hamilton stated that Fowler grabbed him from behind, indicating that Hamilton had already turned to leave before the force was applied. Under these facts, the appellants' decision to grab and choke Hamilton was not objectively reasonable as a matter of law.

The appellants further argue that, even if they did not need to use force against Hamilton, the amount of force they used is insufficient as a matter of law to support an excessive force claim. We disagree. The excessive force standard "looks to the need for force, the amount of force used, and the injury inflicted." *Jones v. City of Dothan*, 121 F.3d 1456, 1460 (11th Cir. 1997) (per curiam). The principle is well established in this Circuit, moreover, "that the application of de minimis force, without more, will not support a claim for excessive force in

7

violation of the Fourth Amendment." *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000). In past excessive force cases, we determined that the following uses of force were de minimis: pushing a handcuffed arrestee up against a wall because the arrestee spoke after being told to "shut up," *Post v. City of Fort Lauderdale*, 7 F.3d 1555, 1556 (11th Cir. 1993); slamming a suspect against a wall and kicking his legs apart without provocation, *Jones*, 121 F.3d at 1458; and grabbing an arrestee from behind, shoving him a few feet against a vehicle, and pushing him up against a van, which resulted in minor bruising but did not require medical treatment, *Nolin*, 207 F.3d at 1258 n.4 (11th Cir. 2000).

While the force that the appellants used against Hamilton was arguably similar to the force used in those examples, Hamilton was not a suspect or arrestee as the plaintiffs were in those examples. Moreover, the length of time for which Fowler choked Hamilton, the additional restraint that Carpenter and Jackson each imposed, and the pain that Hamilton allegedly felt in his neck after the incident all support our conclusion that a genuine issue of material fact exists as to whether the appellants violated Hamilton's constitutional right to be free from excessive force.

*2. Clearly Established?*

The Supreme Court has declared that "[q]ualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient,

reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S. Ct. 596, 599, 160 L. Ed. 2d 583 (2004) (per curiam). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 199, 125 S. Ct. at 599 (internal quotation marks omitted). We must undertake this inquiry, moreover, "in light of the specific context of [this] case, not as a broad general proposition." *Id.* at 198, 125 S. Ct. at 599 (internal quotation marks omitted).

The question, then, is whether the law was clearly established at the time of the appellants' conduct that they were violating Hamilton's Fourth Amendment right. We have held that, "[f]or the law to be 'clearly established,' case law must ordinarily have been earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law." *Priester v. City of Riviera Beach*, 208 F.3d 919, 926 (11th Cir. 2000). Thus, "unless a controlling and materially similar case declares the official's conduct unconstitutional, a defendant is usually entitled to qualified immunity." *Id.*

The parties do not cite any cases that are relevant to the situation that the appellants confronted here. In excessive force cases, however, we have recognized

9

a narrow exception to the rule requiring particularized case law. *Id.* If "the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of caselaw, the official is not entitled to the defense of qualified immunity." *Id.* (internal quotation marks omitted). Thus, because the appellants used force to detain Hamilton after Hamilton had allegedly turned his back to leave the room, we disagree with the appellants that, as a matter of law, Hamilton's right to be free from such force was not clearly established at that time.

C. Discretionary-Function Immunity from the State-Law Claims

In response to the battery and false imprisonment claims, the appellants asserted discretionary-function immunity as an affirmative defense in both their answer and their memorandum in support of their motion for summary judgment. Alabama law enforcement officers are immune from suit for the "performance of any discretionary function within the line and scope of his or her law enforcement duties." Ala. Code § 6-5-338. Our inquiry under this statute is first to determine whether the government official was performing a discretionary function when the alleged wrong occurred. *Wood v. Kesler*, 323 F.3d 872, 883 (11th Cir. 2003). If so, the burden shifts to the plaintiff to demonstrate that the defendant acted either in bad faith, willfully, or maliciously. *Id.*

10

We agree with the district court's conclusion in its § 1983 analysis that the appellants were acting within their discretionary authority when the incident occurred. *See Moore v. Adams*, 754 So. 2d 630, 632 (Ala. 1999) (defining discretionary acts as those "requiring exercise in judgment and choice and involving what is just and proper under the circumstances"). Hamilton bears the burden, therefore, of showing that the appellants acted maliciously, willfully or in bad faith.

Hamilton asserted in his complaint that the appellants acted "intentionally, wantonly, recklessly, and/or maliciously" in committing battery and false imprisonment. Though Hamilton neither addressed the discretionary-function immunity defense in his response to the appellants' motion for summary judgment nor mentioned the appellants' bad faith, malice or will in his brief on appeal, we conclude that genuine issues of material fact exist as to whether Hamilton met his burden. More specifically, the parties' disagreement as to how and why the appellants detained Hamilton prevents us from holding that the appellants are entitled to discretionary-function immunity as a matter of law. Accordingly, we affirm the district court's denial of appellants' motion for summary judgment as to the state-law claims for battery and false imprisonment.

**CONCLUSION**

11

For the reasons set forth above, we affirm the district court's denial of the appellants' motion for summary judgment on qualified immunity and discretionary-function immunity grounds.

**AFFIRMED.**