[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 22, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-14793
Non-Argument Calendar

_____

D. C. Docket No. 00-02212-CV-JEC-1

JANICE AKINS,
DEBRA BLOUNT,

Plaintiffs-Appellants,

NATALIE REVELL,

Plaintiff,

versus

FULTON COUNTY, GEORGIA,
VANESSA REYNOLDS, Individually,

Defendants,

JOHN GATES,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(May 22, 2008)**

Before ANDERSON, HULL and WILSON, Circuit Judges.

PER CURIAM:

This is the second time this case has come before us on appeal. Plaintiffs Janice Akins, Debra Blount, and Natalie Revell, former employees of the purchasing department of Fulton County, Georgia, brought this First Amendment retaliation claim pursuant to 42 U.S.C. § 1983 against Defendants John Gates, Vanessa Reynolds, and Fulton County, Georgia.[1] In our previous opinion, we reversed the district court's grant of summary judgment, on the basis of qualified immunity, to defendant Gates with respect to the claims brought by Akins and Blount. *See Akins v. Fulton County, Ga.*, 420 F.3d 1293, 1308 (11th Cir. 2005) ("*Akins I*"). After our opinion in *Akins I*, the Supreme Court held that statements made by public employees during the course of their official duties are not protected speech under the First Amendment. *Garcetti v. Ceballes*, 547 U.S. 410, 421, 126 S. Ct. 1951, 1960, 164 L. Ed. 2d 689 (2006). The instant appeal is taken from the district court's order reinstating its grant of summary judgment in favor of Gates on a motion for reconsideration, in which the court held that the plaintiffs have alleged no constitutional violation under *Garcetti* because their reports of bid

---

[1] We previously affirmed the district court's grant of summary judgment in favor of Defendants Reynolds and Fulton County because the plaintiffs had abandoned these claims. *See Akins v. Fulton County, Ga.*, 420 F.3d 1293, 1297 n.1 (11th Cir. 2005). Revell has since settled her remaining claims. The instant appeal is brought only by plaintiffs Akins and Blount.

irregularities to the Fulton County Commissioner were made pursuant to their official duties. For the following reasons, we AFFIRM.

## I. BACKGROUND

In their § 1983 claim, Akins and Blount allege, *inter alia*, that Gates constructively discharged them as public employees in retaliation for reporting certain bid irregularities to Fulton County Commissioner Emma Darnell. In their first appeal before this court, we applied the *Connick-Pickering*[2] test and concluded that Akins's and Blount's discussions with Commissioner Darnell were protected speech on a matter of public concern. *Akins I*, 420 F.3d at 1304. We reversed the district court's grant of summary judgment on the basis of qualified immunity, holding, in part, that Akins and Blount had presented sufficient evidence for a reasonable jury to conclude that Gates's conduct in response to the appellants' discussions (i.e., removing their work duties, excluding them from meetings, instructing other coworkers not to talk with them, requiring them to publicly display their time sheets when other coworkers were not, accusing Blount of

---

[2] *See Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S. Ct. 1731, 1734–35, 20 L. Ed. 2d 811 (1968) (instructing that courts balance both the government's and public employee's interests in determining whether employee's comments on a matter of public concern warrant First Amendment protection); *Connick v. Myers*, 461 U.S. 138, 146–47, 103 S. Ct. 1684, 1689–90, 75 L. Ed. 2d 708 (1983) (discussing *Pickering* and holding that when a public employee does not speak on a matter of public concern, "fairly considered as relating to any matter of political, social, or other concern to the community," the public employer's personnel decision allegedly taken in reaction to the employee's speech does not fall within the purview of the First Amendment).

sabotaging bids) amounted to adverse employment action under the First Amendment, in violation of then-clearly established law. *Id.* at 1305–06. Specifically, we held that our decision in *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551 (11th Cir. 1997), gave Gates fair warning that his conduct towards Akins and Blount, which provoked their resignation, amounted to constructive discharge.[3] *Akins I*, 420 F.2d at 1302. We therefore reversed and remanded Akins's and Blount's First Amendment retaliation claims for trial.

Following our decision in *Akins I*, the Supreme Court issued its decision in *Garcetti*, holding that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." 547 U.S. at 421, 126 S. Ct. at 1960. Gates subsequently filed a motion for reconsideration, pursuant to Federal Rule of Civil Procedure 54(b) or 60(b), arguing that the statements Akins and Blount made to Commissioner Darnell are not protected speech under *Garcetti* because the discussions were made pursuant to their official job duties.

---

[3] In *Poole*, we reversed the district court's grant of summary judgment against the plaintiff on her constructive discharge claim, holding a reasonable person could conclude that the plaintiff's working conditions—where she was stripped of all responsibility, given no desk and only a chair, and isolated from other employees—were so intolerable as to prompt her resignation. 129 F.3d at 553.

Appellants responded to Gates's argument with supplemental affidavits averring that they were supervised by, and reported to, Gates (Purchasing Agent for the Fulton County Purchasing Department) and their supervisor, Reynolds (Acting Purchasing Administrator). Appellants further averred that the only job duties they had with respect to the Board of Commissioners was to set the agenda for procurement meetings and to respond to any request for information that a board member made to Gates. Gates moved to strike portions of the appellants' affidavits, arguing that certain paragraphs contradicted their prior deposition testimony.

The district court granted Gates's motion for reconsideration and his motion strike, to the extent that the supplemental affidavits contradict prior testimony. Finding that Akins's and Blount's testimony showed that they regularly communicated bid concerns to the commissioners as part of their routine job duties, the district court held that the plaintiffs' reports of bid irregularities to Commissioner Darnell were made pursuant to their official duties, even if they did not follow the formal chain of command. The district court concluded that, under *Garcetti*, these discussions were not protected speech under the First Amendment. Consequently, the district court reinstated its earlier order granting summary judgment to Gates, but now on a broader basis because under *Garcetti*, the

5

plaintiffs have alleged no constitutional violation.  This appeal ensued.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate where the pleadings, discovery materials on file, and any affidavits demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986); *Beshers v. Harrison*, 495 F.3d 1260, 1265 (11th Cir. 2007).  In our qualified immunity analysis, we must address this threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the offic[ial]'s conduct violated a constitutional right?"  *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001).  Therefore, we review the district court's grant of a motion for summary judgment on the basis of qualified immunity *de novo* and construe the facts in the light most favorable to the non-moving party.  *Kesinger ex rel. Estate of Kesinger v. Herrington*, 381 F.3d 1243, 1247 (11th Cir. 2004).  Viewing the record in this light, all issues of fact are eliminated, and "[w]ith the plaintiff's best case in hand, the court is able to move to the question of whether the defendant committed the constitutional violation alleged in the complaint without having to assess any facts in dispute."  *Robinson v. Arrugueta*, 415 F.3d 1252, 1257 (11th Cir. 2005).

6

## III. DISCUSSION

### A. *Motion to Strike Supplemental Affidavits*

On appeal, Akins and Blount first argue that the district court erred in granting Gates's motion to strike their supplemental affidavits because "mere conflict with prior testimony provides an insufficient basis to strike an affidavit as a sham affidavit." Brief for Appellants at 24. We have instructed that district courts "shall consider all evidence in the record when reviewing a motion for summary judgment—pleadings, depositions, interrogatories, affidavits, etc.—and can only grant summary judgment if *everything* in the record . . . demonstrates that no genuine issue of material fact exists." *Tippens v. Celotex Corp.*, 805 F.2d 949, 952 (11th Cir. 1986) (internal quotation marks omitted). Recognizing that parties may try to escape summary judgment by using affidavits to create issues of fact where none existed, we have allowed an affidavit to be disregarded as a "sham" if it flatly contradicts earlier deposition testimony in a manner that cannot be explained. *Van T. Junkins and Assoc. v. U.S. Indus.*, 736 F.2d 656, 657 (11th Cir.1984). Under the sham affidavit concept, "[w]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."

7

*Id.*

We apply the sham affidavit concept to limited circumstances, and thus, "[e]very discrepancy contained in an affidavit does not justify a district court's refusal to give credence to such evidence." *Tippens*, 805 F.2d at 954 (internal quotation marks omitted). The court must be careful to distinguish "between discrepancies which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence." *Id.* at 953. "In light of the jury's role in resolving questions of credibility, a district court should not reject the content of an affidavit even if it is at odds with statements made in an early deposition." *Id.* at 954.

In their supplemental affidavits, Appellants both swore that their interaction with the Board of Commissioners, which occurred only at Gates's direction and under his supervision, was limited to "setting the agenda [for] procurement meetings" and providing Gates with information when any board member requested information from Gates. R.96 (Akins Supplemental Affidavit at 2 ¶ 4) (Blount Supplemental Affidavit at 2 ¶ 4). Akins further averred that "[t]he agenda packages included low bid information, sole source information, number of bidders, and procurement types." *Id.* (Akins Supplemental Affidavit at 2 ¶ 4).

Akins and Blount each averred that she "kn[ew] of no official job

8

requirement that required [her] to affirmatively take steps to bring any matter occurring within the Procurement Department directly to a member of the Board of Commission." *Id.* (Akins Supplemental Affidavit at 2 ¶ 5) (Blount Supplemental Affidavit at 2 ¶ 5). Akins explained that they had "routine agenda briefings with John Gates . . . prior to the scheduled board meetings," and Blount stated that "my understanding was that if there were issues with respect to bid files, I would report those to . . . Mr. Gates." *Id.*

As to their meeting with Commissioner Darnell, Akins and Blount stated that they "went outside of [their] official job duties as [they] had no affirmative obligation to report these matters," and "decided to report these bid irregularities to Commissioner Darnell in the hopes that this would begin an investigation and that the improper bidding practices would cease." *Id.* (Akins Supplemental Affidavit at 2 ¶ 6) (Blount Supplemental Affidavit at 2 ¶ 6). Akins added "[i]n fact, this was the first face-to-face meeting with Commissioner Darnell pertaining to bid irregularities I ever had." *Id.* (Akins Supplemental Affidavit at 2 ¶ 6).

Finally, both Akins and Blount averred that they "had previously brought most of these matters to the attention of Mr. Gates," and as far as they were aware, they were "under no affirmative obligation to go above [his] head and report these issues directly to elected members of the Fulton County Government." *Id.* (Akins

9

Supplemental Affidavit at 2–3 ¶ 7) (Blount Supplemental Affidavit at 2–3 ¶ 7).

These statements do not contradict the plaintiffs' earlier depositions. During her deposition, Akins testified that "[i]t was common practice that the contracting group met with John Gates as the purchasing director as well as his assistant [Reynolds] prior to every board agenda preparation to apprise him of what concerns were on that agenda." Akins Dep. at 18–19. When Akins was asked whether she recalled Gates saying anything that revealed his awareness about the bids plaintiffs planned to discuss with Commissioner Darnell, Akins responded that Gates was aware of the bids at issue because "[t]hose were the bids that were going to be presented to the board and . . . . that is the standard practice for all our agendas prior to them being presented to the Board of Commissioners, that was part of my job to contact the commission to find out their concern[s] and to appraise Mr. Gates as to what those concerns were." *Id.* at 19–20. Akins's deposition testimony revealed that she prepared agendas and fact sheets for the Board of Commissioners meetings, bulleting "how the solicitation was handled, whether it was to a low bidder or whether we awarded to other than [a] lower bidder." *Id.* at 22. Yet, Akins was not specifically asked, nor did she unambiguously answer, any question about whether her responsibilities required her to present improper bidding practices occurring within the procurement

department directly to the board.

Neither does Blount's supplemental affidavit contradict her own prior testimony. When asked how she became involved in the meeting with Commissioner Darnell, Blount responded that "[a]s contracting officers in that office we . . . took turns rotating preparing the draft agendas. So for each . . . solicitation or recommended award that was on the agenda, we had to review it and understand the complexities of the award . . . before we felt comfortable putting it on the agenda." Blount Dep. at 12–13. When re-asked the same question, Blount responded, "[w]e felt there were issues that needed to be brought to someone else's attention. We had attempted to discuss these with John Gates on numerous occasions." *Id.* at 13. As Blount further explained during her deposition, "[w]e had pre-agenda meetings, briefing meetings. . . . [a]t [which] he was made aware of any concerns that we had. . . . Nothing had happened. . . . So we felt that was one of the issues that we wanted to discuss with Commissioner Darnell." *Id.* at 14. Blount's deposition testimony is consistent with the substance of her supplementary affidavit, in which Blount states that she and Akins did not arrange the meeting with Commissioner Darnell out of any official duty to report bid irregularities to her, but with the hope that the bidding improprieties would end.

Because Akins's and Blount's January 3, 2007 supplemental affidavits are

11

not inherently inconsistent with their prior deposition testimony, the district court erred in granting Gates's motion to strike, and "the affidavit[s] should have been considered with everything in the record resolving all doubts in favor of the non-moving party." *Tippens*, 805 F.2d at 954.

B. *Public Employees' First Amendment Protection after* Garcetti

A public employee must prove the following elements by a preponderance of the evidence to maintain a claim of First Amendment retaliation:

> (1) the employee's speech in on a matter of public concern; (2) the employee's First Amendment interest in engaging in the speech outweighs the employer's interest in prohibiting the speech to promote the efficiency of the public services it performs through its employees; and (3) the employee's speech played a "substantial part" in the employer's decision to demote or discharge the employee.

*Battle v. Bd. of Regents*, 468 F.3d 755, 759–60 (11th Cir. 2006) (per curiam). "The first two elements are questions of law designed to determine whether the First Amendment protects the employee's speech." *Id.*

In *Garcetti*, the Supreme Court held that statements made by public employees pursuant to their official duties are not protected under the First Amendment. 547 U.S. at 421, 126 S. Ct. at 1960. In so holding, the Court explained that

> [w]hen an employee speaks as a citizen addressing a matter of public concern, the First Amendment requires a delicate balancing of the competing interests surrounding the speech and its consequences. When, however, the

12

employee is simply performing his or her job duties, there is no warrant for a similar degree of scrutiny.

*Id.* at 423, 126 S. Ct. at 1961. The Court's holding in *Garcetti* directly impacts the second element of a public employee's First Amendment retaliation claim. So long as a public employee speaks during the course of performing her job duties, her First Amendment interests will always be outweighed by her employer's interest in prohibiting the speech, and her claim must fail as a matter of law.

Because the parties in *Garcetti* did not dispute that the plaintiff—a district attorney—wrote the offending memorandum pursuant to his official duties, the Court had "no occasion to articulate a comprehensive framework for defining the scope of an employee's duties in cases where there is serious room for debate." *Id.* at 424, 126 S. Ct. at 1961. Nevertheless, the Court made clear that the "proper inquiry is a practical one. . . . and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes." *Id.* at 424–25, 126 S. Ct. at 1961–62.

In this case, the parties dispute whether the plaintiffs' reports of bid irregularities and improprieties to Commissioner Darnell were made pursuant to their official duties. After reviewing the record, it is clear that Akins and Blount had responsibilities to review various aspects of each bid that came through the

13

purchasing department and to inform Gates of any concerns they had about the bids during briefings and pre-agenda meetings. Construing the facts in favor of Akins and Blount, as we must on summary judgment, it does not appear that they had any affirmative duties to report these bidding irregularities to Commissioner Darnell. Yet, this does not dispose of our *Garcetti* inquiry.

The relevant distinction guiding our practical inquiry is that between public employer and citizen. As the Supreme Court explained, "[e]mployees who make public statements outside the course of performing their official duties retain some possibility of First Amendment protection because that is the kind of activity engaged in by citizens who do not work for the government." *Garcetti*, 547 U.S. at 423, 126 S. Ct. at 1961. Thus, the pithy inquiry here is not whether plaintiffs had an affirmative duty to report bid irregularities to Commissioner Darnell, but whether they made their statements to the commissioner as citizens who do not work for the government.

We find that when Akins and Blount made their statements to Commissioner Darnell, they did not speak as private citizens who do not work for the government, but rather as public employees. They discussed irregularities with the selection process for bids that were about to be presented on the Board of Commissioner's agenda, and how Gates improperly opened the cost proposal for one project,

14

thereby tainting the in-house procedure used to maintain the integrity of cost proposals prior to committee meetings. Akins Dep. at 45–46. Akins and Blount also explained how the bid irregularities went against the purchasing department's "basic instructions to bidders that we put in every package, for our RFP [request for proposal] solicitations." *Id*. at 46. The plaintiffs further complained about Gates' behavior towards them during meetings and about his failure to act on their concerns with the bidding process. Examining the full record in the light most favorable to the plaintiffs, it is clear that Akins and Blount had a duty to report these bid irregularities to Gates, who in turn was expected to present them to the Board of Commissioners. That the plaintiffs had no affirmative duty to go outside the formal chain of command and directly report these bid irregularities to Commissioner Darnell, or any other commissioner, does not convert their speech to that of a private citizen. We agree with the district court that Akins's and Blount's statements to Commissioner Darnell were made pursuant to their official duties.

## IV. CONCLUSION

The district court erred in granting Gates's motion to strike Akins's and Blount's supplemental affidavits because these were not inconsistent with their prior deposition testimony. Nevertheless, we affirm the district court's grant of

summary judgment in favor of Gates because examining the record in the light most favorable to the plaintiffs, it is clear that the plaintiffs' statements to Commissioner Darnell were made during the course of their official duties as public employees. Because the plaintiffs spoke as public employees on a matter of public concern, under *Garcetti*, their speech was not protected under the First Amendment, and their retaliation claims fail as a matter of law.

AFFIRMED.