[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-10068
Non-Argument Calendar
_____

D.C. Docket No. 6:09-cv-00912-JA-DAB


CHARLIE JOHN WILLIAMS,

Plaintiff - Appellant,

versus

ERIC A. BAUER,
JEFFREY P. BROUSE,
RUBEN J. CHAVEZ,
CHARLES E. SMITH,

Defendants - Appellees.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(January 14, 2013)

Before MARTIN, JORDAN, and ANDERSON, Circuit Judges.

PER CURIAM:

Charlie Williams, a federal prisoner proceeding pro se, sued federal agents Eric A. Bauer, Jeffrey P. Brouse, Ruben J. Chavez, and Charles R. Smith (Defendants)[1] claiming that they used excessive force while arresting him.[2]  The district court granted Defendants' motion for summary judgment, concluding that they were immune from civil damages because they were acting within the scope of their discretionary authority during the arrest and their objectively reasonable conduct did not violate the Fourth Amendment.  On appeal, Williams argues that the district court erred in its ruling.

## I.

We review the grant of a summary judgment motion de novo, applying the same legal standard as the district court.  Durruthy v. Pastor, 351 F.3d 1080, 1084 (11th Cir. 2003).  A moving party is entitled to summary judgment "if [he] shows that there is no genuine dispute as to any material fact and [he] is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party has the

---

[1] Defendants are agents of the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF).  Williams also sued Special Agent Richie Zayas, in favor of whom summary judgment was earlier granted.  He is not a party to this appeal because Williams contests only the grant of summary judgment for Bauer, Brouse, Chavez, and Smith.

[2] Although Williams asserted his excessive force claim under the Eighth Amendment, the district court properly construed his complaint to fall under the Fourth Amendment because "[t]he Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest."  Lee v. Ferraro, 284 F.3d 1188, 1197 (11th Cir. 2002).

initial burden of establishing that there are no genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552-53 (1986). "The burden then shifts to the non-moving party to rebut that showing by producing affidavits or other relevant and admissible evidence beyond the pleadings." Jones v. UPS Ground Freight, 683 F.3d 1283, 1292 (11th Cir. 2012) (quotation marks omitted).

We consider the facts and reasonable inferences in the light most favorable to the nonmoving party. Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009). We also liberally interpret pleadings from a pro se litigant. See Douglas v. Yates, 535 F.3d 1316, 1320 (11th Cir. 2008).

## II.

Government officials are immune from liability for civil damages when in the course of performing a discretionary function "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982).

To be eligible for qualified immunity, an official must show that he was performing a discretionary function at the time of the alleged constitutional

violation.  Lee v. Ferraro, 284 F.3d at 1194.  "To determine whether an official was engaged in a discretionary function, we consider whether the acts the official undertook are of a type that fell within the employee's job responsibilities." Crosby v. Monroe County, 394 F.3d 1328, 1332 (11th Cir. 2004) (quotation marks omitted).  The record supports the district court finding that the agents were performing a discretionary function at the time of the arrest.  According to declarations from the arresting agents,[3] Williams was arrested as part of an undercover operation investigating the criminal activities of the group known as Corporate Thugz Entertainment Crew.  Specifically, Defendants were part of the Special Response Team that arrested Williams shortly before he planned to commit a violent robbery.  Williams stated in his own affidavit that he was arrested pursuant to a "reverse sting operation."  This arrest was part of Defendants' responsibility as law enforcement agents.  Therefore, Defendants were performing a discretionary function.  Id.

Once an official has shown that he was performing a discretionary function, the plaintiff bears the burden of demonstrating that the official committed a constitutional violation and that the violated constitutional right was "clearly

---

[3] Special Agents Richie Zayas, Charles E. Smith, Ruben J. Chavez, Jeffrey P. Brouse, Eric A. Bauer, and Christopher Felski provided declarations as exhibits to Defendants' Motion for Summary Judgment.

4

established" at the time of the arrest.  Id.  Williams argues that Defendants violated the Fourth Amendment by using excessive force while arresting him.  He also contends that material facts are in dispute as to whether Defendants' use of force was excessive.

To prevail on an excessive force claim under the Fourth Amendment, Williams must show that a seizure occurred and the force used during that seizure was unreasonable.  See Troupe v. Sarasota County, Fla., 419 F.3d 1160, 1166 (11th Cir. 2005).  The Supreme Court has instructed that in deciding whether the force used was reasonable, we consider a number of factors, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Graham v. Connor, 490 U.S. 386, 396, 109 S. Ct. 1865, 1872 (1989).  We have explained that "the force used by a police officer in carrying out an arrest must be reasonably proportionate to the need for that force, which is measured by the severity of the crime, the danger to the officer, and the risk of flight."  Lee v. Ferraro, 284 F.3d at 1198.  When weighing the relevant factors, we are mindful that "the reasonableness inquiry in an excessive force case is an objective one: the question is whether the officer's actions are objectively reasonable in light of the facts and circumstances

5

confronting him." Crosby v. Monroe County, 394 F.3d at 1333 (quotation marks omitted).

Even viewing the facts alleged by Williams in the light most favorable to him, Defendants' use of force was not excessive and did not violate the Fourth Amendment. Defendants arrested Williams on the day they believed he intended to commit a serious crime. They also had reason to believe that Williams would harm them and others. Williams had informed Zayas, who was working undercover, that he was going to rob a stash house and "the plan was to kill everyone present in the stash house." Williams said that police in the area would not be able to "handle" him. Shortly before the arrest, Zayas saw that the man in the passenger seat of Williams's car, Mercutio Stokes, had a rifle. Zayas informed the arresting agents that Stokes had a gun in the car. Stokes admitted that he had a rifle "between the seat."[4]

There is also video evidence showing that Williams attempted to evade arrest.[5] To effect the arrest, Defendants identified themselves as law enforcement

---

[4] A question of fact exists about whether Stokes lifted the rifle during the arrest, and therefore we construe that fact in the light most favorable to Williams. Nevertheless, our decision to affirm the granting of summary judgment is based on the undisputed facts that Williams was evading arrest with a firearm in his vehicle and at the time he intended to commit a violent robbery.

[5] ATF agents had cameras at the scene which monitored the arrest.

6

and approached the front of Williams's vehicle.  Instead of getting out of the car as ordered, Williams accelerated in reverse.  Williams briefly stopped the car, but as Defendants continued to approach with instructions to get out of the vehicle, Williams again accelerated in reverse.

Williams claims that he attempted to surrender and that the video recording does not capture his effort to do so.  Williams, Stokes, and Johnson stated in their affidavits that Williams attempted to surrender by placing his hands above the steering wheel.  Williams explains that as he was attempting to surrender, he "let his foot up off the brake and the vehicle moved backwards for a bit, and stopped . . . [then] moved back a second time."

"Though the facts must be taken in the light most favorable to [Williams], the determination of reasonableness [in an excessive force claim] must be made from the perspective of the officer."  Robinson v. Arrugueta, 415 F.3d 1252, 1255 (11th Cir. 2005).  Also, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Graham v. Connor, 109 S. Ct. at 1872.  Here, Defendants stated that they fired in the direction of Williams to protect themselves and their team members.  Because Williams had said that he would kill everyone at the stash house and Stokes had a gun, they believed that Stokes would open fire.

7

Even assuming that Williams raised his hands to surrender, he concedes that Defendants would not have seen this gesture because of his illegally tinted windows. Instead, Williams's two accelerations in reverse suggested that he was evading arrest.

Although Defendants fired ten shots at the vehicle,[6] the video evidence demonstrates that they did not use any force until Williams accelerated in reverse for the second time. Because "it is constitutionally reasonable for an officer to use deadly force when a suspect is threatening escape and possible harm to others," we conclude that this use of force was objectively reasonable from the perspective of Defendants. Robinson v. Arrugueta, 415 F.3d at 1256.[7] Defendants did not violate the Fourth Amendment and are entitled to qualified immunity.

For these reasons, we affirm the judgment of the district court.

**AFFIRMED**.

---

[6] Williams was not directly hit by a bullet. Instead, the bullets pierced the windshield and Williams sustained injuries from the broken glass.

[7] Because there was no constitutional violation, our qualified immunity inquiry ends here. See id.

8