[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-13080
Non-Argument Calendar

_____

D.C. Docket No. 6:18-cv-00288-PGB-GJK

CARLOS IVAN VICENTE-ABAD,

Plaintiff - Appellee,

versus

TIMOTHY SONNENBERG,
in his Individual Capacity,

Defendant - Appellant,

CITY OF MELBOURNE POLICE DEPARTMENT, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 20, 2020)

Before WILSON, NEWSOM, and BRANCH, Circuit Judges.

PER CURIAM:

Officer Timothy Sonnenberg appeals from an order of the United States District Court for the Middle District of Florida denying in part his motion for summary judgment. On appeal, he argues that he is entitled to qualified immunity on Carlos Vicente-Abad's claim—under 42 U.S.C. § 1983—that Officer Sonnenberg used excessive force in violation of the Fourth Amendment when he shot Vicente-Abad, who was a passenger in a vehicle that Officer Sonnenberg and his partner had been following.

**I**

Given the case's procedural posture, we take the facts in the light most favorable to Vicente-Abad, as the non-moving party. *Stephens v. DeGiovanni*, 852 F.3d 1298, 1313 (11th Cir. 2017). Vicente-Abad was a passenger in a grey sedan that Officer Sonnenberg and his partner had purportedly seen driving above the posted speed limit. Finding the vehicle suspicious, Officer Sonnenberg and his partner followed the sedan into the parking lot of an apartment complex, shined a spotlight from their patrol vehicle onto the sedan, and then disembarked to approach on foot. Officer Sonnenberg lagged behind his partner because he was retrieving a flashlight from the car. When his partner reached the sedan, it started to move forward at four to five miles per hour. At that time, Officer Sonnenberg

2

was still next to his patrol vehicle, about 60 feet away from the sedan. He was standing in a relatively narrow gap between the side of his patrol vehicle and a row of parked cars—the distance between the open door of his patrol vehicle and the row of cars was subsequently measured to be about six feet. The sedan passed through this gap, but it was not angled directly at Officer Sonnenberg, and he was not struck by the sedan as it passed. As the sedan approached and passed Officer Sonnenberg, he fired ten rounds at it—five entered the front of the car, four entered the driver's side, and one apparently missed entirely. One of the shots hit Vicente-Abad, injuring his neck and bicep. The sedan continued approximately 130 feet past the patrol vehicle before coming to a stop, after which Vicente-Abad exited the vehicle and was placed under arrest.

Vicente-Abad sued Officer Sonnenberg, claiming—among other things— that the shooting was an exercise of excessive force in violation of the Fourth Amendment. Officer Sonnenberg moved for summary judgment, insisting that the shooting was not unreasonable and, in any event, that he should be entitled to qualified immunity under the circumstances. The district court denied the motion as to that Fourth Amendment claim.

## II

"We review de novo a district court's denial of qualified immunity," *Piazza v. Jefferson Cty.*, 923 F.3d 947, 951 (11th Cir. 2019), and therefore "apply the

3

same legal standards as the district court." *Stephens*, 852 F.3d at 1313 (quotation

omitted). Accordingly, "[w]e resolve all issues of material fact in favor of the

plaintiff, and then determine the legal question of whether the defendant is entitled

to qualified immunity under that version of the facts." *Id.* (quotation omitted).

But, "[t]hough the facts must be taken in the light most favorable to [Vicente-

Abad], the determination of reasonableness must be made from the perspective of

the officer." *Robinson v. Arrugueta*, 415 F.3d 1252, 1255 (11th Cir. 2005).

## III

## A

An officer seeking to assert a qualified immunity defense must first

"establish[] that he was acting within his discretionary authority." *Bailey v.

Swindell*, 940 F.3d 1295, 1300 (11th Cir. 2019) (internal quotation marks and

citation omitted). Once an officer does so, "the burden shifts to the plaintiff to

show both (1) that [he] suffered a violation of a constitutional right and (2) that the

right [he] claims was 'clearly established' at the time of the alleged misconduct."

*Id.* at 1300 (alterations in original) (internal quotation marks and citation omitted).

The Fourth Amendment prohibits "unreasonable . . . seizures." U.S. Const.

amend. IV. There is no doubt that Officer Sonnenberg seized Vicente-Abad within

the meaning of the Fourth Amendment when he shot him. *Tennessee v. Garner*,

471 U.S. 1, 7 (1985) ("[T]here can be no question that apprehension by the use of

deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment."). The only question is whether that seizure was "'objectively reasonable' in light of the facts and circumstances confronting" Officer Sonnenberg. *Graham v. Connor*, 490 U.S. 386, 397 (1989).

More specifically, Vicente-Abad argues that shooting constituted excessive force—more force than was reasonable given the circumstances. The Supreme Court has made clear that the "totality of the circumstances" should be considered when deciding whether an application of force was excessive, *Garner*, 471 U.S. at 8–9, but certain factors have been singled out as particularly important. Specifically,  we have focused on three factors taken from the Supreme Court's opinion in *Graham*: "the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [wa]s actively resisting arrest or attempting to evade arrest by flight." 490 U.S. at 396; *see also Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 821 (11th Cir. 2010). In addition to the *Graham* factors that bear on the use of force, generally, "[w]e have distilled from *Tennessee v. Garner* three key factors concerning the reasonableness of the use of *deadly* force," in particular. *Terrell v. Smith*, 668 F.3d 1244, 1251 (11th Cir. 2012) (emphasis added) (citation omitted). As we explained in *Terrell*:

> [A]n officer may use deadly force to stop a fleeing felony suspect when the officer: (1) has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others or that he has committed a crime involving the infliction or

5

threatened infliction of serious physical harm; (2) reasonably believes that the use of deadly force was necessary to prevent escape; and (3) has given some warning about the possible use of deadly force, if feasible.

*Id.* (internal quotation marks and citation omitted).

Even when an officer violated someone's constitutional rights, that officer may still be shielded from liability if the right he violated was not "'clearly established' at the time of the alleged misconduct." *Bailey*, 940 F.3d at 1300 (quotation omitted). And although "[t]he basic constitutional law governing excessive force in arrest situations was well established" long before Officer Sonnenberg shot Vicente-Abad, *Stephens*, 852 F.3d at 1316, qualified immunity still protects officers "in close cases where a reasonable officer could have believed that his actions were lawful," *Lee v. Ferraro*, 284 F.3d 1188, 1200 (11th Cir. 2002). But "qualified immunity is not appropriate when the *Graham* analysis yields an answer that is clear beyond all doubt." *Id.* In such cases, "officials can still be on notice that their conduct violates established law even in novel factual circumstances," because the "general constitutional rule[s]" of *Graham* and *Garner* "apply with *obvious clarity* to the specific conduct in question." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (emphasis added).

**B**

Taking the facts in the light most favorable to Vicente-Abad, we agree with the district court—Officer Sonnenberg is not entitled to qualified immunity.

6

Officer Sonnenberg used constitutionally unreasonable force when he opened fire on a vehicle approaching him at a jogging pace from 60 feet away, angled so as to pass him by—not on a trajectory to collide with him.  For one thing, the *Graham* factors do not support so severe an application of force here.  At the time of the shooting, Officer Sonnenberg had no reason to believe that any serious crime had been committed.  At most, he had witnessed a violation of a speed limit, although taking the facts in the light most favorable to Vicente-Abad, he was mistaken even as to that violation.  Additionally, Officer Sonnenberg could not have reasonably believed that his life was in danger; although he was nearly in the path of an oncoming car, it was moving slowly and was far enough away to give him plenty of time to react.  Indeed, the sedan ultimately passed Officer Sonnenberg by without striking him.  He had time enough not only to get out of the way, but to fire ten rounds in the process.  And finally, while it does appear that the driver of the sedan was attempting to evade the police, the officers had not informed the occupants that they were under arrest or being detained.  The officers had not even used the lights or sirens on their patrol vehicle to pull the sedan over.  Instead, they followed the car, shined a spotlight on it, and approached on foot without giving any instructions to its occupants.

Perhaps more importantly, the *Garner* factors that we have singled out for evaluating applications of *deadly* force weigh heavily against Officer Sonnenberg.

7

As already explained, Officer Sonnenberg had no reason to believe that anyone was in danger, nor that anyone in the car had committed a crime that posed a risk of serious physical harm. As a result, while he may have believed that deadly force was necessary to prevent escape, preventing escape was not an important enough goal in the circumstances for a reasonable officer to believe that deadly force was justified. In addition, Officer Sonnenberg had time to warn the occupants of the car that he would employ deadly force, but he opened fire without issuing a warning.

After weighing these factors, it is clear that Officer Sonnenberg violated Vicente-Abad's constitutional rights by employing deadly force unreasonably. Moreover, because the unreasonableness of the shooting is apparent in light of the *Graham* factors and still more obvious in light of the *Garner* factors, Vicente-Abad's right not to be fired on in this situation was clearly established at the time.

Our decision in *Robinson v. Arrugueta*, 415 F.3d 1252, on which Officer Sonnenberg relies, is inapposite. Although that case also involved an officer who feared being run over by a slowly moving vehicle, it differs in significant respects—the very respects that our precedent has singled out as important. *Id.* at 1254. There, the officer had reason to believe that the driver of the vehicle was a heroin dealer. *Id.* at 1253–54. The officer had already instructed the driver to put his hands up before the vehicle began to move toward him. *Id.* at 1254. And

8

although the vehicle began to move slowly, the officer was standing in a narrow gap between the front of the suspect vehicle and his patrol car—no more than four feet wide—and was therefore in danger of being crushed between the vehicles. *Id.* He had less than three seconds to react at most. *Id.*

The differences between *Robinson* and this case are decisive in light of *Graham* and *Garner*. The officer in *Robinson* was dealing with a much more serious crime than Officer Sonnenberg had any reason to suspect. *See Graham*, 490 U.S. at 396. He was also in *immediate* danger of serious harm, with little time to react. *Id.* Moreover, the officer in *Robinson* issued a warning before employing deadly force, 415 F.3d at 1254, which Officer Sonnenberg failed to do. *Terrell*, 668 F.3d at 1251 (citing *Garner*, 471 U.S. at 11–12). In short, *Robinson* is entirely dissimilar from this case in the ways that matter most, according to our precedent.

*    *    *

The district court correctly determined that, viewing the facts in the light most favorable to Vicente-Abad, Officer Sonnenberg violated his clearly established constitutional rights. Accordingly, we **AFFIRM**.

9