[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-10550

_____

D. C. Docket No. 02-00053-CV-T-24-MAP

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 3, 2005
THOMAS K. KAHN
CLERK

DIANNE TROUPE, as Personal Representative,
for the Estate of Ricardo Robinson, deceased,

Plaintiff-Appellant-
Cross-Appellee,

versus

SARASOTA COUNTY, FLORIDA, a Florida
municipal corporation and a political
subdivision of the State of Florida,
GEOFFREY MONGE, individually and in his
official capacity as the former Sheriff
of Sarasota County, Florida, et al.,

Defendants-Appellees,

WILLIAM F. BALKWILL, in his official
capacity as the Sheriff of Sarasota
County, Florida,
KEVIN L. GOODING, individually and in his
official capacity as a Sarasota County,
Florida Deputy Sheriff,
TIMOTHY L. BAUER, individually and in his
official capacity as a Sarasota County,
Florida Deputy Sheriff,

Defendants-Appellees-
Cross-Appellants.

_____

No. 04-10563

_____

D. C. Docket No. 02-00054-CV-T-24-MAP

LEON WAITERS, JR.,

Plaintiff-Appellant-
Cross-Appellee,

versus

SARASOTA COUNTY, FLORIDA,
a Florida municipal corporation and a
political subdivision of the State of Florida,
GEOFFREY MONGE,
individually and in his official capacity as the
former Sheriff of Sarasota County, Florida,
SARASOTA COUNTY SHERIFF'S DEPARTMENT,
a political subdivision of the State of Florida,

Defendants-Appellees,

WILLIAM F. BALKWILL,
in his official capacity as the Sheriff of
Sarasota County, Florida,
KEVIN L. GOODING,
individually and in his official capacity as a
Sarasota County, Florida Deputy Sheriff,
TIMOTHY L. BAUER,
individually and in his official capacity as a
Sarasota County, Florida Deputy Sheriff,

Defendants-Appellees-
Cross-Appellants.

2

Appeals from the United States District Court
for the Middle District of Florida
_____

**(August 3, 2005)**

Before TJOFLAT and KRAVITCH, Circuit Judges and LIMBAUGH[*], District
Judge.

KRAVITCH, Circuit Judge:

In two cases, consolidated on appeal, Plaintiff-Appellant Dianne Troupe, as

personal representative for the estate of Ricardo Robinson, deceased, and Plaintiff-

Appellant, Leon Waiters, Jr. (collectively "the plaintiffs") appeal the district

court's grant of summary judgment in favor of Sarasota County, Sheriff Geoffrey

Monge, Sheriff William F. Balkwill, Deputy Kevin L. Gooding, and Deputy

Timothy L. Bauer (collectively "the defendants") in their 42 U.S.C. § 1983 action

based on alleged excessive force by police officers.

 **I. Facts**

On the morning of September 30, 1999, the Sarasota County Sheriff's Office

Special Weapons and Tactics ("SWAT") Team prepared to serve a felony drug

arrest warrant for Ryan Hart ("Hart") and a search warrant for Hart's residence

located at 2459 Bahia Vista, Sarasota, Florida ("the residence"). Defendant

---

[*]Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of
Missouri, sitting by designation.

Captain Kevin L. Gooding ("Gooding") was the leader of the SWAT Team. Sixteen other SWAT members, including Defendant Timothy L. Bauer ("Bauer"), reported for the scheduled briefing.

The Special Investigation Bureau ("SIB") detectives working with the FBI violent crimes task force went over information about Hart. The SWAT Team was told that Hart was a 27-year old male with 40 previous arrests and 19 convictions. They were informed that Hart was out on bond for attempted murder and was known to run from the police and for his violent tendencies. Gooding then briefed the Team on the tactical plan for executing the warrants and gave out individual assignments. The Team, dressed in full SWAT gear, then moved to an area near Hart's home to prepare for the execution of the warrants. The surrounding streets near the residence were blocked off by Sarasota County law enforcement personnel.

A surveillance report issued while the team was en route indicated that Hart and two other males—later identified as Robinson and Waiters—had exited the house and were approaching a four door black Oldsmobile ("the Oldsmobile") parked in the driveway. Gooding and the driver of the SWAT Team van drove their vehicles into positions blocking the Oldsmobile's exit from the driveway. Hart and the two men entered the car and locked the doors.

The SWAT Team, with their guns drawn, surrounded the Oldsmobile, and

yelled commands for Hart and the passengers to open the doors and surrender. Gooding attempted to open the driver's door and another Deputy attempted to open the front passenger door, but both doors remained locked. The other officers continued to yell commands such as "Sheriff's department, hands up, hands up, get out of the vehicle," but none of the passengers complied. The Oldsmobile then began to move, with Hart as the driver, revving the engine loudly and the car jerking backwards and forwards.

When the incident occurred, Regina Weatherington ("Weatherington"), a cable splicer for Verizon, was working up approximately 25 feet high on a telephone pole located across the street. She had a clear view of the entire incident. Weatherington's testimony indicates that "the car would move fast–quickly, and stop quickly, and move fast again. Stopping quickly." She testified that the uniformed "policemen had the car surrounded with their bodies" and that she was surprised that no one got hit.[1]

Gooding claimed that he heard a change in the tone of the SWAT Team members' voices as the Oldsmobile moved, "like they were in extreme danger where they were." He stated that he "felt a very pressing need at that moment in time to cause that driver to stop doing what he was doing with that car" because his

---

[1] The plaintiffs contend that Hart did not hit any of the officers in the struggle. Corporal Mike Kennedy claims that his foot was run over by the rear tire and Deputy Randall Butsch claims that the car struck him in the left leg.

officers were in serious danger and "at risk for loss of life and limb." Thus, he raised his weapon, but did not shoot the driver because he felt he might harm other SWAT Team members who were in the line of fire. Suddenly, the Oldsmobile made a hard left such that the car was now facing the road. Gooding, believing that he had an opportunity to "disable the car," fired a single shot at a low angle, aiming for the lower portion of the tire. The shot missed the tire and, apparently, did not strike anyone or anything.

Soon thereafter, Bauer saw the car coming directly at him and believed it would run right through him in order to leave the scene. He aimed his weapon and fired two shots at the driver of the Oldsmobile and jumped out of the way as the car swept past him. One bullet struck the driver's door just above the keyhole. The other bullet went through the driver's side window and hit Hart in the back.[2]

Hart then accelerated the car out of the yard, made a left turn onto Bahia Vista, and headed west for over 0.3 miles. The Oldsmobile maneuvered through the intersection of Shade and Bahia Vista without slowing. It then approached an officer's unmarked vehicle, slowed down, made a sharp move to the right to avoid oncoming traffic from the left, and went onto the grass and sidewalk, crashing into a concrete wall. Hart was pronounced dead at the scene. Robinson, the front seat passenger, was also pronounced dead at the scene. The backseat passenger, Waiters, sustained blunt force trauma injuries to the skull, and was transported via

_____

[2]None of the shots hit either Robinson or Waiters.

6

helicopter to a hospital for emergency medical treatment.[3]

After the completion of internal investigations which exonerated the officers from any wrongdoing, the plaintiffs filed suit in Florida State court. The defendants subsequently removed the case to federal district court. Pursuant to § 1983, the plaintiffs alleged: Excessive Force by Defendants Gooding and Bauer (Count I); Failure to Protect Decedent from Unconstitutional Harm by Defendants Gooding and Bauer (Count II); Supervisory Liability by Defendant Gooding (Count III); and Municipal Liability by Defendant Sarasota County and Defendant Sheriff Balkwill (Count IV).[4] Each defendant moved for summary judgment. The district court granted summary judgment on all counts.

In this appeal, we address whether the district court erred in finding that (1) the defendants were not the proximate cause of the plaintiffs' injuries; (2) the defendants' use of deadly force was reasonable under § 1983; and (3) the defendants were entitled to qualified immunity.[5]

**II. Discussion**

---

[3]Waiters remained in a coma for two and a half months following the incident.

[4]The plaintiffs also asserted several state law claims. Because the district court dismissed plaintiffs' federal law claims in their entirety, the district court declined to exercise supplemental jurisdiction over plaintiffs' state law claims. The state law claims were remanded to state court and thus are not at issue on appeal.

[5]We affirm, without discussion, the judgment of the district court with regard to the remaining issues on appeal. *See* 11th Circuit Rule 36-1. Thus, we conclude that (1) Gooding was not liable under § 1983 for supervisor liability; and (2) the Sheriff was not liable under § 1983 for municipal liability.

*A. Standard of Review*

We review the district court's grant of summary judgment *de novo* applying the same standard as the district court. *Korman v. HBC Fla., Inc.*, 182 F.3d 1291, 1293 (11th Cir. 1999). We draw all inferences in favor of the non moving party. *Id. See also Robinson v. Arrugueta*, No. 04-10856 *2 (11th Cir. 2005).

*B. The Defendants Were Not the "Proximate Cause" of the Plaintiffs' Injuries.*

A § 1983 claim requires proof of an affirmative causal connection between the defendant's acts or omissions and the alleged constitutional deprivation. *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986). Recovery of damages is limited to those injuries proved to be caused by the defendants. *See Whiting v. Traylor*, 85 F.3d 581, 586 n.10 (11th Cir. 1996) (holding in a malicious-prosecution case against arresting officers that the chain of causation could be broken by the prosecutor). The district court concluded that Bauer and Gooding were not the proximate cause of the plaintiffs' injuries because it determined that Hart's continued flight after being shot by Bauer constituted an independent "intervening" cause.

For the following reasons, we conclude that the district court did not err in making this determination. First, Gooding fired only one shot and it completely missed striking the car or any of its passengers. Thus, Gooding's single-missed shot was not the proximate cause of any injury to Robinson and Waiters. Hart's decision to continue his flight and his continued exercise of control over the

Oldsmobile after he was shot,[6] "was the intervening cause" of Robinson and Waiters' injuries. The fact that Hart ultimately died from the gunshot wound fired by Bauer does not erase the acts and decisions that Hart made after the shooting and up to the time of his death. "The causal relation does not exist when the continuum between Defendant's action and the ultimate harm is occupied by the conduct of deliberate and autonomous decision-makers." *Dixon v. Burke County*, 303 F.3d 1271, 1275 (11th Cir. 2002). Hart began implementation of his escape before deadly force was applied. His reckless driving preceded any shots, continued as shots were taken, and continued after the shots were fired. Thus, Hart's determination to flee was not a reaction to the force used by Bauer or the other Officers. Instead, Hart's behavior prior to the shots establishes that he had no intention to drive safely regardless of whether shots were fired. Thus, the district court did not err in concluding that it was Hart's reckless driving that

---

[6]Specifically, Gooding points to the following evidence for support that Hart exerted control over the Oldsmobile after he was shot:

(1) Hart drove the vehicle out of the yard onto Bahia Vista Street overshooting the westbound lane, going into the eastbound lane, then quickly turning back into the westbound lane; (2) As Hart drove west on Bahia Vista he rapidly accelerated his car to a speed of 60 to 70 MPH; (3) As the Oldsmobile approached the slower traveling unmarked car of Detective Wallace also in the westbound lane of Bahia Vista, the brake lights of the Oldsmobile came on and the Oldsmobile slowed down; (4) The Oldsmobile initially attempted to go around Detective Wallace's car on the left but was blocked by eastbound traffic. The Oldsmobile then made a sharp turn to the right back into the westbound lane; (5) The Oldsmobile then moved to the right of Wallace's vehicle going up on the sidewalk and hitting a concrete wall and then a concrete pole. Just prior to impact, Wallace saw the car's wheels turn "Like somebody was trying to get back into Bahia Vista" and Deputy Shaw observed the car make a sudden movement to the left and the vehicle's brake lights come on just before impact.

9

caused the death and injury of the plaintiffs and not Bauer's decision to use deadly force.

*C. The District Court Erred in Finding A Fourth Amendment Seizure of Robinson and Waiters.*

The plaintiffs allege that Gooding and Bauer used excessive force in violation of their Fourth Amendment right to be free from unreasonable searches and seizures. To assert a Fourth Amendment claim based on the use of excessive force, the plaintiffs must allege (1) that a seizure occurred and (2) that the force used to effect the seizure was unreasonable. *See Evans v. Hightower*, 117 F.3d 1318, 1320 (11th Cir. 1997). The district court found that a Fourth Amendment seizure of Robinson and Waiters occurred when "Gooding fired at the Oldsmobile and Bauer fired at Hart in an attempt to stop the car." We disagree.

"[A] Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement . . . nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement . . . but only when there is a governmental termination of freedom of movement through *means intentionally applied*." *Brower v. County of Inyo*, 489 U.S. 593, 596-97, 109 S.Ct. 1378, 1381, 103 L.Ed.2d 628 (1989) (emphasis in original). "It is intervention directed at a specific individual that furnishes the basis for a Fourth Amendment claim."

10

*Landol-Rivera v. Cruz Cosme*, 906 F.2d 791, 796 (1st Cir. 1990).

Force regardless of the form directed to a driver of a vehicle–particularly one attempting to flee–does not give rise to a due process deprivation claim unless it was exercised with "a purpose to cause harm" unrelated to the legitimate object of arrest. *Id.* The plaintiffs concede that shots were fired at the driver as he "began to drive parallel to the residence proceeding out of the circular driveway" in an "attempt to stop [the car] from leaving the residence." The plaintiffs do not allege that Gooding or Bauer had the intent to cause harm unrelated to the arrest.

Furthermore, Gooding's attempt to seize Hart by firing at the tire of the Oldsmobile was not a seizure. "[N]either usage nor common-law tradition makes an *attempted* seizure a seizure." *California v. Hodari D.*, 499 U.S. 621, 626 n.2, 111 S.Ct. 1547, 1551 n.2, 113 L.Ed.2d 690 (1991) (emphasis in original). Additionally, stopping a vehicle's driver does not constitute a seizure of a passenger. *See County of Sacramento v. Lewis*, 523 U.S. 833, 844, 118 S.Ct. 1708, 1715, 140 L.Ed.2d 1043 (1998), *citing Brower*, 489 U.S. at 596-97. Thus, when Bauer shot Hart that did not constitute a seizure of the passengers. Therefore, the district court erred when it found that Gooding and Bauer seized the occupants of the vehicle.

Nonetheless, we note that although the district court found that a seizure occurred it also found that the force used to effect the seizure was reasonable.

11

Thus, though we disagree that a seizure occurred, we agree with the district court's final assessment that the plaintiffs did not establish an excessive force claim.

*D. The Defendants were Entitled to Qualified Immunity.*

Even if Gooding and Bauer had seized Robinson and Waiters with unreasonable use of force, the district court correctly found that they were entitled to qualified immunity. In *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001), the Supreme Court set out a two-step analysis to determine whether an officer is eligible for qualified immunity. The first step is to determine whether the facts "[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a constitutional right[.]" *Id.* If the conduct did not violate a constitutional right, the inquiry ends there. If the conduct violated a constitutional right, a court must move on to the second step and determine "whether the right was clearly established." *Id. See also Robinson*, No. 04-10856 *2.

The Fourth Amendment protects individuals from "unreasonable" seizures. As we recently explained in *Robinson*,

> Deadly force is "reasonable" for the purposes of the Fourth Amendment when an officer "(1) 'has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others' or 'that he has committed a crime involving the infliction or threatened infliction of serious physical harm'; (2) reasonably believes that the use of deadly force was necessary to prevent escape; and (3) has given some warning about the possible use of deadly force; if feasible." *Vaughan v. Cox*, 343 F.3d 1323,

12

1329-30 (11th Cir. 2003)[7] (quoting *Tennessee v. Garner*, 471 U.S 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)); *see also Crosby v. Monroe County*, 394 F.3d 1328, 1333 (11th Cir. 2004) ("the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation.").

*Robinson*, No. 04-10856 *2.

The district court determined that the force Gooding and Bauer used under the circumstances was reasonable. The court found that if Hart's escape had been successful, his path of flight "could have posed" a threat of death or serious injury to the public or to other members of the SWAT Team. The plaintiffs argue that the mere possibility that others may be harmed is not enough to justify the use of deadly force, asserting that there must be an immediate and justifiable threat of harm. *See Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989). The plaintiffs contend that numerous witnesses testified that no law enforcement officer or civilian was in the path of the Oldsmobile when the shots were fired.

Although the facts must be taken in the light most favorable to the plaintiffs, the determination of reasonableness must be made from the perspective of the

---

[7]In *Vaughan*, this Court held that a reasonable jury could conclude that an officer used excessive force against a passenger in a moving vehicle when there was evidence that the driver led police on a high-speed chase at speeds approaching 90 MPH and when there was a factual question of whether the suspect made any motion in the direction of hitting the officer or putting other lives in danger.

officer:

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . . . The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation.

*Menuel v. City of Atlanta*, 25 F.3d 990, 996 (11th Cir. 1994), quoting *Graham*, 490 U.S. at 396-97.

Here, the SWAT Team surrounded the Oldsmobile, and Hart was disobeying their clear orders to put his hands up and surrender. The Oldsmobile suddenly moved forward and backward and the Officers had to make split-second decisions of whether they could escape before anyone suffered serious injury. In their briefing earlier, they were told that Hart was dangerous and had tried to escape from police before and would likely be carrying a weapon. Additionally, the three officers surrounding Hart's car, and a fourth in the yard all separately concluded that deadly force was needed and appropriate to stop Hart, but they did not shoot because they did not have a clear shot and were worried about a cross-fire situation. Bauer was directly in Hart's path as the Oldsmobile accelerated toward him. He had only 3-5 seconds to assess the situation before shooting. Even if in hindsight the facts show that the SWAT Team could have escaped unharmed, a reasonable officer could have perceived that Hart posed a threat of serious physical

14

harm.

In *Brosseau v. Haugen*, – U.S. –, 125 S.Ct. 596, 600, 160 L.Ed.2d 583 (2004), the Supreme Court held that it was objectively reasonable for Officer Brosseau to use deadly force against a suspect in an attempt to prevent the suspect's escape and potential harm to others. In *Brosseau*, like the present case, the Officer fired through the driver's side window and the bullet entered the driver's back. 125 S.Ct. at 598. Here, Gooding and Bauer perceived that Hart was attempting to escape and could potentially endanger more lives and thus, Bauer shot through the driver's side window and hit Hart in the back. Because the *Brosseau* Court held that it is constitutionally reasonable for an officer to use deadly force when a suspect is threatening to escape and cause harm to others, and because of the similarities of these two cases,[8] the district court did not err in finding that the officers' conduct did not violate a constitutional right and that Gooding and Bauer were entitled to qualified immunity.[9] Finally, because our

---

[8]In *Brosseau,* citizens and other officers were in the immediate area and were at a high risk of harm if the suspect had escaped. *Id.* In the present case, the streets were blocked, which created less possibility of harm to innocent citizens. Nonetheless, the Oldsmobile was surrounded by Officers who were at risk and the car did end up breaking out of the driveway and getting onto a main road. Bauer was aware at the time of the shooting that other surveillance officers were only a short distance away. He also knew that citizens could be on the main street and could be harmed. Thus, Bauer believed there was an immediate risk of harm to the general public.

[9]We note that this case is distinguishable from *Harris v. Coweta County,* 406 F.3d 1307 (11th Cir. 2005). Under the first prong of the *Saucier* analysis, the *Harris* panel concluded that Harris was seized by Scott, a ticketing officer, when Scott rammed his vehicle into Harris's

15

inquiry ends at the first step, we need not determine whether the law was clearly

established at the time of the incident. *Saucier*, 533 U.S. at 201.

## III. CONCLUSION

For the reasons stated above, we conclude that the district court did not err in

granting summary judgment in favor of the defendants.

AFFIRMED.

---

vehicle and that the use of deadly force was unreasonable. *Id.* at 1315-17. The Court stressed that "Scott did not have probable cause to believe that Harris had committed a crime involving the infliction or threatened infliction of serious physical harm, nor did Harris, prior to the chase pose an imminent threat of serious physical harm to Scott or others." *Id.* at 1316. Harris's only crime was speeding. *Id.* In contrast, Hart, in the case *sub judice*, had 40 previous arrests and 19 convictions. The officers were informed that Hart was out on bond for attempted murder and was known to run from the police and for his violent tendencies. Hart bumped his car into one officer before the shooting and ran over the foot of another. Thus, these cases are distinguishable.