[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-11115
Non-Argument Calendar
_____

D.C. Docket No. 0:13-cv-62074-KAM

KEVIN BUCKLER, VERONICA EKANEM,

Plaintiffs - Appellants,

versus

SCOTT ISRAEL,
in his official capacity as Sheriff of Broward County, et al.,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(February 23, 2017)

Before HULL, MARCUS, and JORDAN, Circuit Judges.

PER CURIAM:

Kevin Buckler and Veronica Ekanem appeal the district court's grant of summary judgment in favor of Scott Israel, in his official capacity as Sheriff of Broward County, as to their state law tort claim (Count VI) and civil rights claim under 42 U.S.C. § 1983 (Count VII). The appellants argue that the district court failed to consider their evidence and improperly accepted Sheriff Israel's evidence as true. Following review of the record and the parties' briefs, we affirm.

## I

Because we write for the parties, we assume their familiarity with the underlying record and recite only what is necessary to resolve this appeal.

Mr. Buckler's claims arise out of an incident that occurred in March of 2010. According to Mr. Buckler, Deputy Gerald Wengert allegedly pulled him from his car during a traffic stop, brought him to the ground, and repeatedly punched him in the face. Mr. Buckler claims that Deputy Curtis Roberts also repeatedly punched and kneed him, and falsely claimed that he was resisting arrest. Mr. Buckler further alleges that Deputy Geoff Brown contributed false information to a prosecution brought against him for violently resisting arrest and battery against Deputy Wengert, charges on which Mr. Buckler was acquitted. Mr. Buckler filed state law tort claims against Deputies Wengert and Roberts for assault and battery and § 1983 claims against Deputies Wengert, Roberts, and Brown.

2

Ms. Ekanem's claims arise from an incident that occurred in April of 2011. Ms. Ekanem alleges that Deputies Nicholas DeGiovanni and Steve Santiago handcuffed her and brought her to the ground. She alleges that Deputy Papens Lamisere pressed her face into the pavement with a knee on the back of her neck or head, causing a closed head injury and multiple cuts and abrasions on her face. Ms. Ekanem filed state law tort claims for assault and battery and § 1983 claims against Deputies DeGiovanni, Santiago, and Lamisere.

The appellants also jointly filed against Sheriff Israel a state law claim for negligent hiring, supervision, and retention of the named deputies and a claim under § 1983 for municipal liability. In support of these two claims, the appellants rely on incidents involving the use of force by the named deputies, many of which they argue contain various deficiencies, including lack of photographs and reliance on the deputies' subjective self-reporting. *See* D.E. 109-7. They also cite to a number of lawsuits involving allegations of civil rights violations against the Broward Sheriff's Office and its deputies. Specifically, they cite to two 1989 cases in which juries determined that individual deputies had committed violations for which the BSO was held liable. *See Goad v. Navarro, et al.*, No. 86-6563-CIV, D.E. 110-11; *Hill v. Navarro, et al.*, No. 86-6388-CIV, D.E. 110-12. They also cite to six lawsuits, all of which settled or were voluntarily dismissed, *see* D.E. 111-1

3

to 111-6, and news articles regarding three settlements of suits against the BSO, *see* D.E. 111-7.[1]

The appellants further rely on the opinions from their expert, Kenneth Harms. He concluded that the BSO "has a long history that has developed into a systemic custom of known deficient practices in the selection, supervision, and discipline of its officers contrary to its own policies." D.E. 111-16 at 16.

In response to the two joint claims, Sheriff Israel cites to the BSO's multiple accreditations from the Commission on Accreditation for Law Enforcement Agencies ("CALEA"). He also points to the BSO's written policies and procedures regarding use of force reports and investigations.

The district court granted summary judgment in favor of Sheriff Israel as to the joint state law tort claim (Count VI) and the joint § 1983 claim (Count VII) against him. Upon Mr. Buckler and Ms. Ekanem's motion, the district court entered partial final judgment pursuant to Rule 54(b), and stayed the remaining claims against the deputies pending this appeal.

## II

We review a district court's grant of summary judgment *de novo*, applying the same legal standard used by the district court and drawing all factual inferences

---

[1] The appellants also cite to a 2015 probable cause affidavit for felony battery charges against Deputy Lambert, and a mail and tax fraud judgment against former BSO Sheriff Kenneth Jenne. *See* D.E. 111-8, 111-9.

in the light most favorable to the nonmoving party. *See Johnson v. Bd. of Regents*, 263 F.3d 1234, 1242–43 (11th Cir. 2001). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the nonmoving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal citation omitted). In order to overcome a motion for summary judgment, the nonmoving party must present more than a mere scintilla of evidence supporting its position, and must make a sufficient showing that a jury could reasonably find in its favor. *See Brooks v. Cty. Comm'n of Jefferson Cty., Ala.*, 446 F.3d 1160, 1162 (11th Cir. 2006).

## III

The appellants argue that the district court erred in granting summary judgment in favor of Sheriff Israel on their joint state law tort claim for negligent hiring, supervision, and retention. We, however, agree with the district court that this claim fails as a matter of law.

Under Florida law, a claim for negligent hiring, retention, or supervision requires that an employee's wrongful conduct be committed outside the scope of employment. *See Mallory v. O'Neil*, 69 So. 2d 313, 315 (Fla. 1954). *See also Delaurentos v. Peguero*, 47 So. 3d 879, 882 (Fla. 3d DCA 2010) ("Where, as here,

5

a plaintiff alleges and a defendant admits that the alleged torts took place during the course and scope of employment, employer liability can only be pursued on the basis of respondeat superior and not on the basis that the employer was negligent."). The appellants themselves pled that the deputies acted within the scope of their employment with Sheriff Israel and the BSO. *See* Second Am. Compl. ¶ 142. Accordingly, we affirm the district court's grant of summary judgment as to Count VI against Sheriff Israel.

## IV

The appellants also argue that the district court erred in granting summary judgment in favor of Sheriff Israel as to their joint § 1983 municipal liability claim against Sheriff Israel. Specifically, they argue that there is a genuine issue of material fact regarding whether Sheriff Israel failed to hold deputies accountable for their inappropriate use of force. According to the appellants, Sheriff had actual or constructive notice of a pattern of similar conduct by deputies, but did not take any action to correct that misconduct. The appellants assert that the BSO's custom of deliberate indifference with respect to enforcing the BSO's written policies—on the use of force as well as the reporting, documentation, and investigation of uses of force—was the moving force that caused the appellants' injuries. They argue that the district court erred by relying solely upon Sheriff Israel's evidence of

6

written policies and accreditation, rather than the BSO's unofficial policies or custom of "rubber stamping" the use of excessive force.[2]

"A § 1983 claim requires proof of an affirmative causal connection between the defendant's acts or omissions and the alleged constitutional deprivation." *Troupe v. Sarasota Cty., Fla.*, 419 F.3d 1160, 1165 (11th Cir. 2005). "Plaintiffs who seek to impose liability on local governments under § 1983 must prove that action pursuant to official municipal policy caused their injury." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (internal quotation marks and citation omitted). This includes "decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Id.* at 61.

A municipality's "policy of inaction" in light of actual or constructive notice "that its program will cause constitutional violations is the functional equivalent of a decision by the [county] itself to violate the Constitution." *Id.* 61–62. "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id. See also McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) ("[D]eliberate indifference has three components: (1) subjective knowledge of a risk of serious

---

[2] Although the appellants' fact section sets forth facts related to a failure to adhere to the BSO's written policies related to hiring, training, and supervision, *see* Appellants' Br. at 35–38, their argument section discusses only their supervision claims—specifically, the failure to report, investigate, and take action to correct excessive uses of force and misconduct.

7

harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence."). "A pattern of similar constitutional violations" is therefore "ordinarily necessary to demonstrate deliberate indifference." *Connick*, 563 U.S at 62.

To the extent that the appellants argue that the BSO failed to punish or correct deputies for their improper and excessive uses of force, we note that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (U.S. 1989). The appellants have not cited to any instances in which there was a finding of excessive force or other misconduct and the BSO failed to take corrective action. To the contrary, Sheriff Israel submitted evidence of disciplinary action taken when charges of misconduct or violations of the law or BSO policies were sustained. *See* D.E. 124-1. Accordingly, the appellants have not provided sufficient evidence such that a reasonable jury could find that the BSO exhibited a widespread custom or practice of failing to punish deputies for the use of excessive force or other similar misconduct.

In support of their contention that the BSO exhibited a widespread custom or practice of failing to document or investigate potential misconduct, the appellants cite to a number of incidents involving the use of force by the named deputies. They argue that these incidences demonstrate that the deputies' use of force was

8

never questioned by supervisors or command staff. In total, the appellants filed four volumes of use of force reports, as well as a matrix summarizing these incidents. *See* D.E. 105–108, 107-9.

We first note that the sheer number of use of force incidents, without more, does not establish a widespread custom of acquiescence to the use of excessive force. *See Graham*, 490 U.S. at 396. *Cf. Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987) ("[T]he number of complaints bears no relation to their validity."). It appears that the appellants rely upon the report of their expert, Mr. Harms, as the lynchpin between these incidents and their claim. In his report, Mr. Harms ultimately concludes that the BSO has a systemic custom of deficient practices in selection, supervision, and discipline of its officers, and specifically states that the BSO's use of force reports and the internal investigations into this use of force were inadequate.

The report, however, cites only generally to over 100 use of force reports for the proposition that deputies "were frequently using extreme levels of force to effectuate arrests or to otherwise physically control subjects/suspects," D.E. 111-16 at 6, and that "appropriate review of officers['] use of force was, for the most part, non-existent," *id.* at 8. A plaintiff cannot survive summary judgment by merely providing hundreds of pages of investigative files supported only by an expert's general citations to those volumes. Indeed, "a party may not avoid

9

summary judgment solely on the basis of an expert's opinion that fails to provide specific facts from the record to support its conclusory allegations." *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985). *See also Thomas v. City of Chattanooga*, 398 F.3d 426, 432 (6th Cir. 2005) (holding that an expert's conclusion that a police department "must have an unwritten policy of condoning excessive force because of the mere number of complaints previously filed against it, is insufficient to create a genuine issue of material fact on which a jury could reasonably find that such a policy exists").

The report also states that under best practices, use of force reports should contain photographs, and cites to various BSO employee deposition testimony stating conflicting beliefs regarding whether BSO policy requires photographs to be included in use of force reports. *See* D.E. 111-16 at 13–14. The report further states that use of force internal investigations were inadequate, again citing BSO employee depositions, in which high-ranking employees stated, under various iterations, that they did not know of or had reviewed any instances in which deputies used excessive force, and that their evaluations of use of force incidents often relied on the deputies' narrative or report. *See id.* at 15–16. These general statements, however, are not sufficient for a reasonable jury to find a pattern or practice of inadequate investigation, particularly in light of the evidence presented by the BSO regarding its policies and procedures involving use of force incidents.

10

*Cf. Vineyard v. Cty. of Murray, Ga.*, 990 F.2d 1207, 1212 (11th Cir. 1993) (finding substantial evidence to support a jury's conclusion that the county had inadequate policies of supervision, discipline, and training sufficient to establish deliberate indifference to the use of excessive force based on evidence that a dispatcher had discretion about the initial handling of a complaint; the department did not log complaints; the accused officers were assigned to investigate complaints about them; and the sheriff had no policies and procedures manual).[3]

Nor do the lawsuits cited by the appellants serve to put Sheriff Israel on notice of a pattern of constitutional violations. Of the eight suits provided by appellants, only two—the *Hill* and *Goad* decisions—resulted in a jury finding against the BSO and its deputies. Those suits that were settled or voluntarily dismissed do not, without admissions of liability, put the BSO on notice of any pattern of constitutional violations. Nor are two jury verdicts from the late-1980s sufficient to establish a genuine issue of fact as to whether Sheriff Israel or the BSO had notice of a custom or widespread practice of the use of excessive force,

---

[3] The appellants rely upon *Johnson v. City of Youngstown, Ohio*, 2014 WL 667636 (N.D. Ohio Feb. 20, 2014), in which a plaintiff survived summary judgment on his § 1983 municipality claim based on factually similar incidents. The incidents demonstrated that an officer had engaged in a pattern of unlawfully seizing residents, and the City's failure to properly conduct an investigation or take disciplinary action sufficed to demonstrate deliberate indifference. To the extent that this out-of-circuit district court case is persuasive, it is distinguishable. In contrast to the thorough analysis of the incidents in *Johnson*, the appellants here have failed to demonstrate that the list of use of force incidences involved "factual situations that are substantially similar to the case at hand." *Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005).

11

particularly when the appellants have not demonstrated that these cases involved substantially similar factual situations. *See Mercado*, 407 F.3d at 1162. Accordingly, the district court correctly granted summary judgment in favor of Sheriff Israel as to Count VII.

## V

For the foregoing reasons, the district court's grant of summary judgment in favor of Sheriff Israel as to Counts VI and VII of the second amended complaint is affirmed.

**AFFIRMED.**

12