Christopher REED, Plaintiff-Appellant,

v.

**Phillip CLOUGH, Michael Moreschi, Defendants-Appellees.**

No. 16-11659
Non-Argument Calendar

United States Court of Appeals,
Eleventh Circuit.

(June 2, 2017)

Carlus Haynes, Bradley Laurent, Haynes & Laurent, Orlando, FL, for Plaintiff-Appellant

Austin Moore, City of Orlando, Orlando, FL, for Defendant-Appellee

Before HULL, WILSON and JILL PRYOR, Circuit Judges.

PER CURIAM:

Christopher Reed was attacked by a group of assailants outside a nightclub in Orlando, Florida. He fled to his vehicle in the parking lot across the street, but the assailants surrounded him. Attempting to get away, Reed struck some of them with his vehicle. Seeing this, Officer Phillip Clough fired two shots at the vehicle, but Reed neither heard nor saw the shots. Thereafter, Reed was pulled over by the police and eventually was arrested by Detective Michael Moreschi. Reed brought claims under 42 U.S.C. § 1983 and Florida law based on the arrest and shooting.[1]

The district court dismissed all of Reed's claims against Moreschi and some of his claims against Clough. Subsequently, the court granted Clough summary judgment on Reed's remaining claims. Reed now appeals the court's dismissal of his federal malicious prosecution claim against Moreschi and its grant of summary judgment on his excessive force claim against Clough. After careful consideration, we affirm.

## I. BACKGROUND

### A. Complaint and Motion to Dismiss

In his complaint, Reed recounted a harrowing ordeal he suffered in the early hours of New Year's Day 2010. Reed was attacked by a group of inebriated assailants outside Club Limelight in Orlando, Florida. Prior to the attack, the assailants had been kicked out of Club Limelight because they became heavily intoxicated

---

1. Reed sued several other defendants, but only his claims against Clough and Moreschi are the subject of this appeal.

and started fights inside the club. The assailants had also attacked a homeless man in front of the club before setting their sights on Reed. In both cases, the attack was unprovoked. Reed tried to escape the attack by fleeing to his vehicle, which was parked across the street. But while he attempted to enter his vehicle, the assailants continued to punch and kick him. Eventually Reed was able to get into and start his vehicle. As he drove out of the parking lot, Reed struck some of the assailants with his vehicle. Clough then fired several rounds at Reed's vehicle. Two of Clough's bullets went through Reed's windshield, shattering the glass and injuring him. Sometime thereafter, Moreschi arrested Reed. Reed alleged that the arrest was unlawful because he was not the attacker and was trying to flee.

Reed attached to his complaint as an exhibit a deposition of Bruce Hicks, an independent witness to the events described above. Hicks broke up the fight between the assailants and the homeless man and then witnessed the assailants attack Reed for no reason. Hicks flagged down Clough in the street and reported that a group of men had been beating up a homeless man and were now in the parking lot beating up another man. Hicks watched the police officer enter the parking lot and saw Reed run to his vehicle. Then, he observed Reed start the car, drive over a curb and bushes, and hit two individuals. Finally, he reported that when Reed saw the police officer, he drove out of the parking lot, and the officer fired two shots at Reed.

Moreschi's charging affidavit, which Reed also attached to his complaint as an exhibit, describes the investigation he undertook before arresting Reed. Moreschi was called to the scene of a police shooting where four people had been struck by a vehicle. First, he spoke with Hicks, who told him that two fights had broken out in the parking lot across the street. Hicks described that Reed got into his vehicle and began driving, struck several people with the vehicle, turned around, and struck one of them again. Next, Moreschi interviewed Alexandra Bilbao, whose boyfriend Richard Torres was one of the people Reed struck. Bilbao admitted that Torres's friends attacked Reed for no reason but claimed that Torres did not participate and tried to break up the fight. Reed then drove into Torres and the others. What's more, Reed turned his vehicle around and ran over Torres a second time as he lay on the ground. Moreschi also spoke to the assailants (excluding Torres), who eventually admitted that the fight took place but either denied being involved or blamed the fight on Reed. And Moreschi spoke with Reed, who had an abrasion on his forehead and reported lung and kidney failure. Finally, Moreschi described the parking lot itself, which would have allowed Reed to drive straight and exit without turning around. Moreschi arrested Reed on four counts of attempted murder.

In his complaint, Reed claimed that he had suffered and would continue to suffer physical, emotional, mental, and financial damages as a result of his arrest. He asserted eight federal and state causes of action against Clough and Moreschi. Count I was a claim against Moreschi for malicious prosecution under 42 U.S.C. § 1983. Count II was a claim against Clough for excessive force based on his alleged violation of Reed's Fourth and Fourteenth Amendment rights, also under § 1983. Count III was a claim for battery against Clough under § 1983. Counts IV and V were Florida law claims against Moreschi for false arrest and malicious prosecution, respectively. Count VI was a state law battery claim against Clough. Finally, counts IX and X were state law claims against Moreschi and Clough, respectively,

for intentional infliction of emotional distress.[2]

The officers asserted qualified immunity and moved to dismiss Reed's claims against them for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The district court granted their motion in part, dismissing all claims against Moreschi (counts I, IV, V, and IX) and both battery claims against Clough (counts III and VI). But the court allowed counts II and X—Reed's claims against Clough for excessive force and intentional infliction of emotional distress, respectively—to proceed.

## B. Summary Judgment

The parties conducted discovery. Most of the evidence cohered with the facts laid out above, so we highlight here only the statements of two particularly important witnesses: Clough and Reed himself. Hicks's deposition was also significant at the summary judgment stage.

In a statement to fellow police officers a week after the incident, Clough recounted his version of events. He reported that he was driving down Orange Avenue when he was flagged down by someone. That person told him that there was a fight going on in a nearby parking lot. Clough entered the parking lot and several more people informed him that a group of people was beating a guy up. Then, he saw a vehicle drive into three or four of the people standing around in the parking lot. The vehicle disappeared from view for a moment, came back around, and then hit one of the previous victims who was lying on the ground; the vehicle began to drag him. Clough identified himself as a police officer and yelled for the driver to stop, but the

driver did not stop. Clough then ran alongside the vehicle and shot twice, but the vehicle drove out of the parking lot and down Orange Street.

In Reed's deposition he testified that he had some trouble exiting the parking lot as he was trying to escape because it had barricades, so he had to reverse in order to go out a different exit. He admitted that he probably hit two or three of his attackers with his car as he exited the lot. And he acknowledged that as far as he knew he hit one of the attackers twice.[3] Reed did not notice Clough, hear him say anything, or realize that Clough shot at him. He headed for 7-Eleven, hoping to talk to some police officers and let them know what had happened. But before he got there, he noticed the police behind him and pulled over. A police officer came up to Reed's window and smashed it open with his baton, showering glass onto Reed's face. Reed was thrown to the ground and detained. Reed claims that because of damage to his ears from the·attack, he was unable to hear anything the officers said to him.

## II. STANDARDS OF REVIEW

We review the district court's dismissal of Reed's claims *de novo*. *Saunders v. Duke*, 766 F.3d 1262, 1266 (11th Cir. 2014). We accept the well-pleaded factual allegations in the complaint as true and view them in the light most favorable to Reed. *Id.*; *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012). To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929

---

**2.** Counts VII and VIII were negligence claims against other defendants. The district court dismissed both claims, and Reed does not appeal these dismissals.

**3.** On appeal, Reed does not dispute that he "struck at least two of the assailants, one he struck twice." Appellant's Br. 2.

(2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, a plaintiff cannot rely on "labels and conclusion, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955.

We review the district court's grant of summary judgment to Clough *de novo*, applying the same legal standards used by the district court. *Kingsland v. City of Miami*, 382 F.3d 1220, 1225 (11th Cir. 2004). We view the evidence and all reasonable inferences therefrom in the light most favorable to Reed and resolve all reasonable doubts about the facts in his favor. *Id.* at 1226. Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Mere speculation is insufficient to create a genuine issue of material fact. *See Cordoba v. Dillard's Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).

## III. DISCUSSION

Reed appeals the district court's dismissal of his malicious prosecution claim against Moreschi and its grant of summary judgment on his excessive force claim against Clough, both of which were brought under 42 U.S.C. § 1983. "Title 42 U.S.C. § 1983 provides a cause of action against '[e]very person who, under color of any statute of any State ... subjects, or causes to be subjected, any citizen ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws'" of the United States. *Wyatt v. Cole*, 504 U.S. 158, 161, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992) (alterations in original) (quoting 42 U.S.C. § 1983). At both the

motion to dismiss and summary judgment stages, the officer defendants sought to invoke qualified immunity. Qualified immunity "offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation...." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).

To survive a motion to dismiss on qualified immunity grounds, the facts alleged in Reed's complaint must make out a violation of a clearly established constitutional right. *Morris v. Town of Lexington, Ala.*, 748 F.3d 1316, 1322 (11th Cir. 2014).

To be entitled to qualified immunity, a government official "bears the initial burden of showing he was acting within his discretionary authority." *Valderrama v. Rousseau*, 780 F.3d 1108, 1112 (11th Cir. 2015) (internal quotation marks omitted). There is no dispute that the officers here were engaged in discretionary functions. The burden thus shifted to Reed to show that "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004).

## A. Motion to Dismiss

The district court dismissed six of Reed's eight claims against the officers; however, Reed appeals only the dismissal of his federal malicious prosecution claim

against Moreschi.[4] The district court concluded that Moreschi had arguable probable cause to arrest Reed, entitling him to qualified immunity on Reed's federal claim. Similarly, we conclude that Moreschi had probable cause to arrest Reed based on the facts Reed alleged in his complaint and the attached exhibits. Reed argues that these allegations, as well as our case law, preclude a determination that Moreschi had probable cause at this early stage of the proceedings. We disagree because Reed alleged facts sufficient to determine that Moreschi had probable cause to arrest him, and nothing in our case law compels a contrary conclusion. Therefore, we affirm the district court's dismissal of Reed's claims against Moreschi.

Initially, we note that the district court erred in declining to consider the exhibits attached to Reed's complaint. "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c); *see also Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1297 n.4 (11th Cir. 2015) ("Appellant attached multiple exhibits to his complaint ... and we treat those documents as part of the complaint for Rule 12(b)(6) purposes.").[5] Thus, in evaluating the officers' motion to dismiss, we look to Reed's complaint and his two exhibits.[6] If the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls. *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016). Even considering these exhibits, however, we affirm the district court's ruling.

■ The district court dismissed Reed's federal malicious prosecution claim against Moreschi because it determined that Moreschi was entitled to qualified immunity. We need not reach the qualified immunity issue, however, because Reed failed to state a § 1983 malicious prosecution claim against Moreschi. To establish a federal malicious prosecution claim under § 1983, the plaintiff must prove a violation of his Fourth Amendment right to be free from unreasonable seizures in addition to the elements of the common law tort of malicious prosecution. *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003). These elements are: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and *without probable cause*; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Id.* at 881–82 (emphasis added). On the facts alleged in Reed's complaint and contained in its exhibits, Moreschi had probable cause to arrest Reed for at least one count of attempted first degree murder, so Reed did

---

4. Reed arguably appeals his Florida false arrest and malicious prosecution claims as well, but they are resolved on the same ground as his federal malicious prosecution claim. *See infra* note 9. Aside from a single sentence stating that "dismissal of Counts I, III, IV, V, VI, and IX was inappropriate," Reed does not discuss counts III, VI, and IX on appeal, so we do not consider them. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680–81 (11th Cir. 2014) (holding issues not adequately briefed on appeal are abandoned).

5. The district court cited *Day v. Taylor*, 400 F.3d 1272 (11th Cir. 2005), for the proposition that a court may consider extraneous materials without converting a motion to dismiss into a motion for summary judgment if the material is "(1) central to the plaintiff's claim and (2) undisputed." *Id.* at 1276. But the material here was not extraneous; it was attached to Reed's complaint.

6. On appeal, Reed also points to evidence not attached to his complaint in support of his argument that the district court erred in dismissing some of his claims. Unlike the exhibits attached to his complaint, we do not consider this evidence.

not make out a malicious prosecution claim against Moreschi.

Under Florida law, first degree murder is "[t]he unlawful killing of a human being ... [w]hen perpetrated from a premeditated design to effect the death of the person killed...." Fla. Stat. § 782.04(1)(a)(1). And "[a] person who attempts to commit an offense prohibited by law and in such attempt does any act toward the commission of such offense ... commits the offense of criminal attempt." Fla. Stat. § 777.04(1). "Probable cause exists where the facts and totality of the circumstances, as collectively known to the law enforcement officers and based on reasonably trustworthy information, are sufficient to cause a person of reasonabl[e] caution to believe an offense has been or is being committed." *Parker v. Allen*, 565 F.3d 1258, 1289 (11th Cir. 2009) (internal quotation marks omitted).

Moreschi had probable cause to believe that Reed attempted to kill Torres with his vehicle. Hicks told Moreschi that he observed two fights in the parking lot across the street. Bilbao told Moreschi that the assailants attacked Reed. Both Hicks and Bilbao reported that Reed subsequently struck some of the assailants with his vehicle, turned around, and struck one of them again. Bilbao identified the person struck twice as Torres. Moreschi observed that Reed would have been able to exit the parking lot without turning around. Together, this information was sufficient to cause a person of reasonable caution to believe that Reed attempted to kill Torres with his vehicle in violation of Florida Statutes §§ 782.04(1)(a)(1) and 777.04(1); Moreschi therefore had probable cause to arrest Reed.[7]

Reed contends that the arrest was not supported by probable cause because the facts alleged in his complaint and its exhibits, when taken in the light most favorable to him, show that he did not intend to cause any harm and instead was attempting to escape a vicious and ongoing attack. Reed is correct as far as this goes, but his subjective intent does not negate probable cause. As this Court stated in a case involving the far less serious crime of committing criminal damage to a backhoe:

> Plaintiff ... contends that [the officer] lacked probable cause to arrest Plaintiff because [the officer] had no reason to believe that Plaintiff "intentionally" damaged the backhoe. Of course, no police officer can truly know another person's subjective intent. But that Plaintiff did, in fact, damage the backhoe is undisputed. And that fact provides some evidence to believe that Plaintiff intended to damage the backhoe. Beyond that, an officer would need no further evidence of Plaintiff's intent to cause Plaintiff's arrest. No officer has a duty to prove every element of a crime before making an arrest.

*Jordan v. Mosley*, 487 F.3d 1350, 1355 (11th Cir. 2007) (citations omitted). The same principle applies here. Based on the statements by Bilbao and other witnesses and Moreschi's observation of the layout of the parking lot—none of which Reed contests—Moreschi could reasonably have believed that Reed intended and attempted to kill Torres. So even if we assume that Reed's actual intention was to escape a vicious attack, that assumption does not negate Moreschi's probable cause to arrest him for attempted murder.

Reed relies heavily on our *Kingsland* decision to argue that the district court

---

7. Probable cause to arrest Reed for one attempted murder suffices to defeat his malicious prosecution claim even assuming

Moreschi lacked probable cause for the other three counts of attempted murder. *See Lee*, 284 F.3d at 1195–96.

erred in concluding that Moreschi had probable cause to arrest him, but the case is inapposite. In *Kingsland*, we overturned a district court's grant of summary judgment to a group of Miami police officers on a false arrest claim where we determined that they lacked probable cause to arrest Kingsland, the plaintiff, for driving under the influence. 382 F.3d at 1223, 1234. Kingsland alleged that a Miami police officer ran a red light and crashed into the truck she was driving. *Id.* at 1223. Thereafter, about 20 police officers arrived at the scene, but none of them took statements from Kingsland or any other witness except the police officer involved in the crash, who claimed Kingsland was at fault. *See id.* Two officers on the scene reported smelling an odor of cannabis coming from her truck and person, and they arrested her for driving under the influence. *Id.* at 1223–24. They never searched her vehicle or summoned drug-sniffing dogs to the scene, however, and Kingsland later tested negative for narcotics. *See id.* at 1223–25.

Presented with these facts, we concluded that summary judgment was inappropriate because we could not "allow a probable cause determination to stand principally on the unsupported statements of interested officers, when those statements have been challenged and countered by objective evidence." *Id.* at 1228. Reed argues that by the same logic, probable cause cannot be established here based on the statements of interested assailants. But the cases are distinguishable.

Kingsland claimed that she had never engaged in illegal drug activity, alleging in effect that the officers fabricated their claims of smelling cannabis.[8] *Id.* at 1226. Here, Reed does not dispute what Hicks, Bilbao, and the assailants said to Moreschi; rather, he disputes the truth of what they said and the inferences Moreschi was entitled to draw from it. Reed also highlights *Kingsland*'s statement that "an officer may not choose to ignore information that has been offered to him or her. . . . [n]or may the officer conduct an investigation in a biased fashion or elect not to obtain easily discoverable facts." *Id.* at 1229. That is true, but here Moreschi recorded interviews with at least six witnesses (including Reed) and investigated the physical layout of the scene before arresting Reed. He may well have come to the wrong conclusion, as Reed alleges, but Moreschi's investigation was neither biased nor incomplete based on the facts alleged.

At bottom, Reed challenges the reasonability of Moreschi's probable cause determination, but the facts alleged in the complaint and its exhibits were sufficient to give Moreschi probable cause to arrest him. This probable cause negated Reed's malicious prosecution claim, so the district court properly dismissed it.[9] *See Wood*, 323 F.3d at 881–82.

## B. Motion for Summary Judgement

The district court granted summary judgment to Clough on both of Reed's

8. Because *Kingsland* reviewed the district court's grant of summary judgment, we also considered evidence supporting Kingsland's allegation that the Miami officers fabricated evidence. *See Kingsland*, 382 F.3d at 1226–27. Here, on a motion to dismiss, we assume the truth of Reed's factual allegations. *See Saunders*, 766 F.3d at 1266.

9. We also affirm the district court's dismissal of Reed's Florida false arrest and malicious

prosecution claims against Moreschi—counts IV and V, respectively—because the existence of probable cause is sufficient to defeat both claims. *See Von Stein v. Brescher*, 904 F.2d 572, 584 n.19 (11th Cir. 1990) ("Under Florida law, probable cause is an affirmative defense to a claim for false arrest and lack of probable cause is an element that must be established in a malicious prosecution case.").

remaining claims, but Reed appeals only the court's ruling on his federal excessive force claim. Reed alleged that Clough violated both his Fourth and Fourteenth Amendment rights when he shot at Reed's vehicle. After examining the record, we agree with the district court's determination that Reed had not been seized within the meaning of the Fourth Amendment and so could not make out a Fourth Amendment excessive force claim. The district court also concluded that Clough enjoyed qualified immunity against Reed's Fourteenth Amendment excessive force claim because Clough's actions did not shock the conscience. Once again, we agree.

### 1. Reed Has No Fourth Amendment Excessive Force Claim Because Clough Did Not Seize Him.

 We agree with the district court that the undisputed evidence that Reed did not learn about Clough's gunshots until he was later stopped by police demonstrated that Reed was not seized within the meaning of the Fourth Amendment. Therefore, summary judgment was appropriate on Reed's Fourth Amendment excessive force claim against Clough. "To assert a Fourth Amendment claim based on the use of excessive force, the plaintiff[ ] must allege (1) that a seizure occurred and (2) that the force used to effect the seizure was unreasonable." *Troupe v. Sarasota Cty.*, 419 F.3d 1160, 1166 (11th Cir. 2005). A seizure occurs when an officer "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *California v. Hodari D.*, 499 U.S. 621, 625, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) (internal quotation marks and emphasis omitted). "Neither usage nor common-law

tradition makes an *attempted* seizure a seizure." *Troupe*, 419 F.3d at 1167 (alteration omitted) (quoting *Hodari D.*, 499 U.S. at 626 n.2, 111 S.Ct. 1547).

Here, Clough did not seize Reed when he shot at Reed's vehicle. Reed's failure to notice Clough's gunshots was undisputed, so Clough's show of authority did not restrain Reed's liberty. *See Hodari D.*, 499 U.S. at 625, 111 S.Ct. 1547. As for physical force, Reed did allege in his complaint that Clough's gunshots "resulted in [Reed] suffering cuts and lacerations as a result of the glass that shattered on him when two of the bullets went through his front windshield." Compl. 8 (Doc. 2).[10] If supported by evidence, this allegation would raise a novel question about whether physical harm resulting from intentional police action that does not itself cause a defendant to stop constitutes a seizure. *See, e.g., Brooks v. Gaenzle*, 614 F.3d 1213, 1216–25 (10th Cir. 2010) (examining this question at length). But on appeal Reed does not challenge the district court's conclusion that he was not seized, and the record contains no support for the complaint's allegation that Reed was injured as a result of Clough's gunshots. Instead, Reed testified in his deposition that he was showered by glass when an officer later broke his window with a baton. Therefore, the district court was correct to conclude that there was no seizure within the meaning of the Fourth Amendment. As such, summary judgment on Reed's Fourth Amendment excessive force claim was appropriate. *See Troupe*, 419 F.3d at 1167 (granting summary judgment to officer who shot at plaintiffs and missed because plaintiffs were not seized and could not establish an excessive force claim).

10. References to "Doc. ——" refer to the numbered docket entries in the district court record of the case.

### 2. Reed's Fourteenth Amendment Excessive Force Claim Fails Because Clough's Actions Were Not Unjustifiable Under the Circumstances.

■ We also agree with the district court that Clough's actions do not shock the conscience, so they did not amount to excessive force in violation of the Fourteenth Amendment. The Fourteenth Amendment's "substantive due process guarantee protects against government power arbitrarily and oppressively exercised." *Carr v. Tatangelo*, 338 F.3d 1259, 1271 (11th Cir. 2003) (internal quotation marks omitted). "The Supreme Court has explained that the cognizable level of executive abuse of power is that which shocks the conscience." *Id.* (alteration and internal quotation marks omitted). "The standard for showing excessive force in violation of the Fourteenth Amendment, therefore, is higher than that required to show excessive force in violation of the Fourth Amendment." *Fennell v. Gilstrap*, 559 F.3d 1212, 1217 (11th Cir. 2009).

The Supreme Court has stated that "conduct intended to injure in some way *unjustifiable by any government interest* is the sort of official action most likely to rise to the conscience-shocking level." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 849, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (emphasis added); *see also Maddox v. Stephens*, 727 F.3d 1109, 1119–23 (11th Cir. 2013) (applying this standard). We evaluate a number of factors in determining whether a defendant had a justifiable gov-

ernment interest in using force, including "the need for force and the amount of force used, the extent of injury inflicted, and whether force was applied in a good faith effort ... or maliciously and sadistically for the very purpose of causing harm." *Carr*, 338 F.3d at 1271 (quoting *Jones v. City of Dothan*, 121 F.3d 1456, 1461 (11th Cir. 1997)) (internal quotation marks omitted). Applying these factors to Clough's actions here, we conclude that shooting at Reed's vehicle was not unjustifiable by any government interest under the circumstances and does not shock the conscience, so we affirm the district court's grant of summary judgment to Clough.

First, we examine the need for force and the amount of force used. Although we take the facts in the light most favorable to Reed, we consider those facts from the officer's perspective in evaluating the amount of force used. *Cf. Troupe*, 419 F.3d at 1168 (stating the same in the Fourth Amendment reasonability context). The record establishes that Clough was driving on Orange Avenue when he was flagged down by Hicks who reported that some assailants had beaten up a homeless man and were now beating up another man in a nearby parking lot. Arriving at the parking lot, Clough saw a vehicle drive into a group of at least two people. Then, he witnessed the vehicle turn and hit one person a second time.[11] Clough attempted to get the driver's attention.[12] But the vehicle exited the parking lot, and Clough

---

11. Reed's brief—which argues that Reed "did not come close to striking anyone as he left the scene"—could be read to dispute that he hit anyone a second time. Appellant's Br. 28. But in his statement of "Undisputed Facts" in his brief Reed stated that he "struck at least two of the assailants, one he struck twice." *Id.* at 2. So we accept as undisputed that Clough saw Reed's vehicle strike one person twice.

12. Clough stated that he yelled for Reed to stop. In his response to Clough's motion for summary judgment, Reed disputed this, citing Hicks's deposition, which did not mention it. But Hicks actually went further, stating that Reed "saw the cops were there." Hicks Dep. 7 (Doc. 39-2). Thus, even drawing inferences in the light most favorable to Reed, we conclude that Clough did something in an attempt to draw Reed's attention.

fired two shots at it.[13] Clough argues that his use of force was justified because given what he had witnessed he perceived the driver to be a threat to others. Reed responds that he was already driving away and posed no further danger. The amount of force Clough used might not have been reasonable under the Fourth Amendment. *See, e.g., Brosseau v. Haugen,* 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (declining to reach the Fourth Amendment issue in a factually analogous case). But under the heightened Fourteenth Amendment standard we now apply, we cannot say that Clough's conduct was disproportionate under the circumstances.

Second, we consider the extent of the injury caused by the police conduct. Here, Reed was not injured by Clough's gunshots. *See supra* Section III.B.1.

Third, we determine "whether force was used in good faith to maintain or restore order or maliciously and sadistically to cause harm." *Carr,* 338 F.3d at 1273. On appeal, Reed claims that "the shooting was nothing more than a retaliation for the incident that had already terminated, or for [Reed's] failure to stop." Appellant's Br. 30. While this could be construed as an assertion that the shooting was malicious, Reed cites no evidence in the record for this proposition, and we find none. Clough's firing at Reed's vehicle may have been hasty and ill-advised, but there is nothing in the record to suggest that it was malicious or sadistic.

Thus, Clough's shooting at Reed's vehicle was not "unjustifiable by any government interest," so it is not the sort of conduct that "shocks the conscience." *Lewis,* 523 U.S. at 846, 849, 118 S.Ct. 1708. After assessing the factors above in the totality of the circumstances, we conclude that Reed failed to state a violation of substantive due process. Reed cites a variety of cases for the proposition that an officer may not shoot a suspect posing no danger to him or others. *See, e.g., Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985); *Salvato v. Miley,* 790 F.3d 1286 (11th Cir. 2015); *Morton v. Kirkwood,* 707 F.3d 1276 (11th Cir. 2013). This much is axiomatic. But even the most factually similar of these cases, *Morton,* included evidence that the plaintiff was sitting still in a parked car with his hands raised in the air when shot seven times. 707 F.3d at 1279–80. Those are not the facts of this case. Further, each of the cases Reed cites was decided under the Fourth Amendment and not under the more stringent Fourteenth Amendment standard applicable to this case. As such, they do not compel a different outcome here. We therefore agree with the district court that Clough is entitled to qualified immunity on Reed's Fourteenth Amendment excessive force claim. *See Carr,* 338 F.3d at 1273–74.

## IV. CONCLUSION

For these reasons, the judgment of the district court is **AFFIRMED**.

---

13. The district court stated that Clough fired two shots "as Reed continued to drive the Vehicle out of the Parking Lot." Order Granting Summ. J. 2 (Doc. 44). However, Reed correctly points out that Hicks stated in his deposition that "Christopher Reed drove out of the parking lot and the cop fired two shots at him." Hicks Dep. 7. Drawing all reasonable inferences in the light most favorable to Reed, we accept Hicks's version of events that Reed had exited the parking lot before Clough fired at him.